413 Mich. 22 (1982)
319 N.W.2d 320
In re CERTIFIED QUESTION
FORD MOTOR COMPANY
v.
LUMBERMENS MUTUAL CASUALTY COMPANY
Docket No. 65503, (Calendar No. 13).
Supreme Court of Michigan.
Argued November 17, 1980.
Decided April 26, 1982.
Dykema, Gossett, Spencer, Goodnow & Trigg (by Richard J. McClear and Joseph F. Lucas) for plaintiff.
Denenberg, Tuffley, Thorpe, Bocan & Patrick (by John L. Hopkins, Jr., and Ilene Gordon) for defendant Lumbermens Mutual Casualty Company.
Robins, Zelle, Larson & Kaplan (by Lawrence Zelle, Mark J. Feinberg, and Lynn M. Roberson) for defendant Allendale Mutual Insurance Company.
BLAIR MOODY, JR., J.
Pursuant to GCR 1963, 797.2,[1] this Court ordered consideration of the following question certified by the United States District Court, Eastern District of Michigan, Southern Division. 409 Mich 924 (1980).
"Should the statutory standard form fire insurance policy [MCL 500.2832; MSA 24.12832] which includes the following language at line 157:
"`No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss'
be construed so that the running of the 12-month *29 period is tolled from the time the insured gives notice of the loss until the insurer formally denies liability?"
We answer the certified question in the affirmative.
The United States District Court set forth the relevant facts in the certificate prepared in conformity with GCR 1963, 797.2(b):
"Ford Motor Company, plaintiff herein, has instituted this action against Allendale Mutual Insurance Company (`Allendale') and Lumbermens Mutual Casualty Company (`Lumbermens') seeking recovery of Three Million Six Hundred Sixty-Seven Thousand Dollars ($3,667,000) for loss and damage suffered by Ford as a result of a March 9, 1977 fire and explosion, involving the `A' blast furnace located at Ford's Rouge plant in Dearborn, Michigan. At the time of the loss, Ford had standard fire and extended coverage insurance policies with both Allendale and Lumbermens, insuring Ford against physical damage and business interruption loss resulting from specifically named perils, including fire, explosion and damage from the heat of molten metal. Each of the policies insured fifty percent (50%), pro rata, of losses incurred by Ford subject to a Two Million Dollar ($2,000,000) deductible.
"The liability related facts involved in the `A' blast furnace occurrence of March 9, 1977 are in dispute and it is unnecessary for purposes of this certificate to recite them in any detail. It is sufficient to state that Ford has taken the position that the physical damage and business interruption arising from the March 9, 1977 incident were caused by fire and/or explosion and were, therefore, insured under the Allendale and Lumbermens policies. It is the position of the insurers that the only insured peril causing damage was heat from molten metal, and that damage resulting from that peril did not exceed the Two Million Dollar ($2,000,000) deductible provision in the policies. On that basis, the defendants have denied any liability under the policies to Ford arising out of the loss of March 9, 1977.
*30 "Ford filed the instant suit on August 17, 1978. Thereafter defendants filed separate answers alleging, amongst other defenses, that Ford's suit was barred by the one-year period of limitations contained in the policies. On January 21, 1980, the defendants filed motions for summary judgment claiming that the defendants were entitled to judgment as a matter of law because Ford's suit had not been filed before March 9, 1978. Ford Motor Company claims that the running of the 12-month period of limitations should be tolled from the time it gave notice of the loss to the insurers until liability was formally denied and that suit was timely filed."
The issue presented is whether the statutory standard form policy, like a similar contractual insurance policy, should be construed to permit an intervening tolling of the limitation period.
In The Tom Thomas Organization, Inc v Reliance Ins Co, 396 Mich 588; 242 NW2d 396 (1976), this Court construed an inland marine insurance policy. That policy contained a limitation provision which, although not mandated by statute, is similar to the instant statutory provision.[2] We held that the running of the limitation period was tolled from the date the insured gave notice of loss until the insurer formally denied liability.
The Tom Thomas Court predicated its holding on reconciliation of the proof-of-loss and payment-of-claims provisions with the limitation provision of the policy. The effect of the proof-of-loss and payment-of-claims provisions was to substantially shorten the 12-month limitation period for bringing suit. This reconciliation approach was adopted *31 from Peloso v Hartford Fire Ins Co, 56 NJ 514; 267 A2d 498 (1970).
An examination of Peloso significantly reveals that the New Jersey Supreme Court construed statutory provisions identical to the Michigan standard policy prescribed by statute.[3] We stated in Tom Thomas, 593-594:
"The New Jersey Supreme Court, in Peloso * * *, reached what we regard to be a sound result reconciling policy provisions concerning proof of loss and payment of claims with the provision imposing a time limitation for commencement of an action. Suit on a fire insurance policy was instituted 18 months after the date of the fire and 9 months after liability was denied by the insurer. The Court noted that while the policy purported to give the insured 12 months to begin an action, operation of the proof of loss and payment of claim terms significantly shortened that period of time. The Court concluded that the period of limitation was tolled from the time an insured gives notice of loss until the insurer formally denies liability:
"`In this manner, the literal language of the limitation provision is given effect; the insured is not penalized for the time consumed by the company while it pursues its contractual and statutory rights to have a proof of loss, call the insured in for examination, and consider what amount to pay; and the central idea of the limitation provision is preserved since an insured will have only 12 months to institute suit.' [Peloso, 521.]"
This Court, in Tom Thomas, adopted the analysis of the Peloso court, which reconciled New Jersey's statutory policy provisions, and applied that same analysis to similar contractual policy provisions. Logic requires that we apply the same *32 analysis when faced with Michigan's statutory policy provisions which are identical to the provisions reconciled in Peloso. By permitting the limitation period to be tolled, we reconcile the apparently identical incongruity between the statutory proof-of-loss and payment provisions, and the limitation clause.[4]
In response, the defendants argue that we should interpret these statutory provisions to preclude any tolling of the limitation period. It becomes evident, however, if we agreed with defendants, that insureds would be forced to read different meanings from substantially similar or identical language in a contractual standard form policy as compared with a statutory standard form policy. Such a result would appear illogical and contradictory. It should be avoided unless the statute commands a different conclusion or analysis from our decision in Tom Thomas.
Thus, the certified question presents an issue of statutory construction and our decision should be guided by legislative intent.[5]
The defendants contend that the statutory language and the legislative history of the current statute mandate an analysis that would proscribe tolling. They argue that the limitation period may not be tolled because the interpretation of the *33 limitation provision set forth in Dahrooge v Rochester German Ins Co, 177 Mich 442; 143 NW 608 (1913), controls the instant question.
In Dahrooge this Court held that the statutory 12-month limitation period began to run on the date of the casualty.[6] The Dahrooge Court rejected the arguments that: (1) the cause of action accrued 60 days after compliance with the statutory claims procedures; (2) the conduct of the insurer waived the limitation period or that the insurer was estopped from relying upon the limitation provision; and (3) the saving provisions of the general statute of limitations, 1897 CL 9738, saved the cause of action from forfeiture because the latest suit was begun within one year after an earlier suit had failed for want of proper service.
The Dahrooge Court focused upon the "plain, clear, and simple language" of the limitation provision. The narrow reasoning employed by the Dahrooge Court did not attempt to reconcile the obvious incongruity between the proof-of-loss and payment provisions, and the limitation provision of the statute. Accordingly, Dahrooge did not address the Tom Thomas-Peloso tolling analysis.
To bolster its approach, the Dahrooge Court, recognizing that the Michigan statutory policy was copied from that of New York, quoted a New York Court of Appeals decision, Hamilton v The Royal Ins Co, 156 NY 327; 50 NE 863 (1898). The Hamilton court concluded that the limitation provision was established by statute. However, the questions of an intervening tolling of the limitation period or the time of commencement of the limitation period were not presented in the Hamilton case. The only question presented was whether a saving *34 provision of the New York statute of limitations applied. Hamilton, 330. Hamilton, therefore, provided faint succor to the underlying analysis in Dahrooge, and, in contrast to Dahrooge, applied a saving provision which permitted suit to continue.[7]
Since our focus today must fairly encompass all interwoven statutory provisions, we cannot subscribe to a narrow analysis which unduly emphasizes a single statutory provision. While the limitation provision commands that the insured has a clear 12 months to institute suit, the proof of loss and payment clauses shrink this period.
As noted above, the pertinent limitation portion of the statute reads at lines 157-161 of the Michigan standard policy:
"No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss."
This segment viewed in isolation affords the insured a period of 12 months in which to commence suit.
However, this limitation provision must be read in conjunction with both the statutory proof-of-loss and payment clauses contained in the Michigan standard policy. The proof-of-loss requirement at lines 97-99 provides:
*35 "[W]ithin sixty days after the loss, unless such time is extended in writing by this Company, the insured shall render to this Company a proof of loss".
The payment clause reads at lines 150-153:
"The amount of loss for which this Company may be liable shall be payable sixty days after proof of loss, as herein provided, is received by this Company".
The proof-of-loss and payment provisions of the policy grant the insurer immunity from suit for at least 60 days after the insured has filed the proof of loss. When all three provisions are read together, the effect of the immunity period upon the 12-month limitation provision becomes unclear.
The essence of the incongruity and its reconciliation was explained in Peloso, 520:
"[W]e think that the central idea of the limitation provision was that an insured have 12 months to commence suit. This must be so since the period is much shorter than the usual 6 years for ordinary contracts and 16 years for contracts under seal. In addition, the period during which an insured's right to bring suit is postponed is for the benefit of the company so that it can pursue its statutory and contractual rights. Accordingly, it ought not to be charged against the insured's time to bring suit."
Thus, the inconsistency of these provisions needs to be reconciled. No one statutory provision should be separated from the others and considered alone. All provisions bearing upon a particular subject should be brought into view and interpreted so as to effectuate the fundamental purposes of the instrument. We are unpersuaded that the narrow *36 linguistic approach of Dahrooge satisfactorily evaluates all provisions.
In addition, the defendants contend that the legislative history of the Michigan standard policy indicates that the tolling analysis of Tom Thomas is inapplicable to the statutory policy provisions. We have reviewed the legislative history and disagree.
The Dahrooge Court analyzed 1905 PA 277 which required use of a standard form policy. The limitation provision in that act required an action to be "commenced within twelve months next after the fire". Thereafter, 1917 PA 256 was enacted requiring use of a standard form policy which provided that an action must be "commenced within twelve months next after the liability shall have accrued". Thus, under the 1917 act the limitation period was altered. The period did not begin to run at the time of the fire, but at the time the cause of action accrued. This language was again changed by 1945 PA 265. The 1945 legislation sets forth the current standard form language. It provides, in language similar to the 1905 act, that an action must be "commenced within twelve months next after inception of the loss".
It is apparent that the 1917 act changed the point from which a calculation of the limitation period was to commence. During the years between the 1917 and 1945 acts, an insured situated similarly to the plaintiffs in Dahrooge would have been afforded a stronger argument regarding the commencement of the limitation period. It is further recognized that the 1945 act once again altered the commencement date for calculating the limitation period with language that closely paralleled the original 1905 provision. The 1945 act *37 returned to a limitation period which begins on the date of the casualty. But this legislative alteration still must be construed in light of the language retained in other provisions of the act.
The 1945 statute re-enacted substantially the same proof-of-loss and payment provisions of the prior 1905 and 1917 acts. In light of the latest change in the limitation clause, however, an incongruity re-emerged between that provision and the proof-of-loss and payment provisions. The 1945 limitation clause, like the 1905 clause, is inconsistent with the proof-of-loss and payment provisions.
The restricted analysis of the 1905 act's limitation provision employed by the Dahrooge Court concentrated on the time for commencement of the limitation period. Even if the Legislature intended to adopt the Dahrooge Court's limited construction of the 1905 act, we discern no legislative history which suggests that a tolling-reconciliation analysis would be improper when all statutory policy provisions are brought into focus. As we have noted, the harmonizing of these inconsistent provisions was not addressed in Dahrooge. We cannot conclude that the Legislature intended to preclude a statutory reconciliation approach which had not been addressed by this Court.[8] Furthermore, *38 the tolling analysis we adopt reconciles the conflicting provisions enacted by the Legislature while giving full effect to the language of the statute.[9]
This conclusion is supported by the apparent purpose of the Insurance Code. MCL 500.100 et seq.; MSA 24.1100 et seq.[10] The extensive regulation of the insurance industry provided for in that code indicates a legislative purpose to protect policyholders. See Comm'r of Ins v American Life Ins Co, 290 Mich 33, 43; 287 NW 368 (1939). Our present interpretation of the statutory policy as a whole comports with this purpose. This interpretation assures that the insured is given one full year to institute suit. At the same time, it places no untoward burden upon insurers.
Accordingly, the certified question is answered in the affirmative. The statutory standard policy provisions are reconciled, as was stated in Peloso, 521, to reach a "fair resolution of the statutory incongruity". The period of limitation begins to run from the date of the loss, but the running of the period is tolled from the time the insured gives notice until the insurer formally denies liability.[11]
*39 Costs are equally divided among the parties, subject to redistribution by the district court. GCR 1963, 797.2(e).
KAVANAGH, WILLIAMS, LEVIN, and FITZGERALD, JJ., concurred with BLAIR MOODY, JR., J.
RYAN, J. (dissenting).
I cannot agree that there exists any justification for writing into the Michigan statutory form of fire insurance policy the tolling provision which the Court has announced today.
The inappropriateness of what is being done is dramatized by the procedural context in which the Court's action is taken.
I
What issues today is a purely advisory opinion for the benefit of a federal court on a theoretical point arising from a case which has already been resolved by the federal district judge by dismissal of the plaintiff's lawsuit.
By order dated March 6, 1980, the learned United States district judge has granted the defendants' motion for summary judgment. In his opinion in support of that order the district judge declared that the reason for awarding the summary judgment is that "there is no tolling in the contract provision and the plaintiff's action was untimely filed. Both defendants' motions for summary judgment will be granted". The rationale for that decision, according to the district judge, is that:
*40 "The primary distinguishing feature between Thomas [The Tom Thomas Organization, Inc v Reliance Ins Co, 396 Mich 588; 242 NW2d 396 (1976)] and Dahrooge [Dahrooge v Rochester German Ins Co, 177 Mich 442; 143 NW 608 (1913)] is that Thomas did not deal with statutory/contractual language, while Dahrooge did.
"Because Dahrooge has not been overruled, and the instant case interprets the amended limitations provision of the statutory fire insurance policy, this Court is free to follow Dahrooge and not Tom Thomas. In fact, a review of the legislative history of the instant limitations provision suggests that the court is bound to follow Dahrooge." (Emphasis added.)
And
"The inescapable conclusion is that Dahrooge still controls Michigan law under the instant statutory provision."
It now appears that there is at least an implicit understanding between the district judge and counsel for the parties to the effect that if the plaintiff can persuade this Court to change the law by overturning Dahrooge v Rochester German Ins Co, 177 Mich 442; 143 NW 608 (1913), and to create a tolling period which will save the plaintiff's claim from the defense of untimeliness, the federal court will grant the plaintiff's "Motion for Rehearing and/or Reconsideration" and consider setting aside the summary judgment of dismissal and reinstating the plaintiff's lawsuit.[1]
*41 The certification rule is GCR 1963, 797; subsection .2 provides:
".2 From Other Courts.
"(a) When a federal court or state appellate court considers a question that Michigan law may resolve and that is not controlled by Michigan Supreme Court precedent, the court may on its own motion or that of an interested party certify the question to the Michigan Supreme Court." (Emphasis added.)
Despite his plain statement that the issue he had already decided by award of summary judgment was "controlled by Michigan Supreme Court precedent", as the rule states, the federal judge, nevertheless, certified the question to this Court. Even more surprisingly, this Court agreed to answer it. The result is that a very considerable amount of this Court's time, energy and resources are invested in an otherwise purely academic exercise, contrived by the litigants and the federal court, to give the plaintiff an opportunity to persuade this Court to reject the controlling precedent and change the law in an advisory opinion, with the reward of new life for the plaintiff if it can persuade the Court to do so. Plaintiff's distinguished counsel is now proved prescient.
II
It is evident from an examination of the Court's opinion in this case that the keystone of its pronouncement is this Court's earlier decision in The Tom Thomas Organization, Inc v Reliance Ins Co, 396 Mich 588; 242 NW2d 396 (1976). There the Court was concerned with a contractual inland *42 marine insurance policy which contained a contractual limitation of action provision comparable to the statutory limitation language involved in this case. It provided that no action upon the policy
"shall be sustainable in any court of law or equity unless the same be commenced within twelve (12) months next after discovery by the insured of the occurrence which gives rise to the claim."
This Court read into that very plain contractual language a tolling provision "to allow the contractual period of limitation to run from the date of the casualty or, as provided in this policy, discovery of the loss, but to toll the running of the limitation from the time the insured gives notice until the insurer formally denies liability". The Thomas Court said it was adopting the tolling provision, despite the plain language of the insurance contract, because it saw that as the "appropriate resolution" of its conclusion that the proof of loss and payment provision and the limitation of action provision of the Thomas policy needed to be reconciled.[2]
The principal authority relied upon by the Thomas Court suggesting the need for a "reconciling" of the settlement of loss and limitation of action language of the insurance policy was the case of Peloso v Hartford Fire Ins Co, 56 NJ 514; 267 A2d 498 (1970). In Peloso, the court addressed the meaning of the limitation of action provision of the New Jersey statutory form of fire insurance policy, the language of which is identical with the Michigan statute. That court found an "incongruity" between the proof of loss and payment provision *43 and the limitation of action provision and resolved the "incongruity" by reading into the New Jersey statute the tolling provision adopted by this Court in Thomas and now in this case.
Having applied the Peloso court's construction of the New Jersey equivalent of the Michigan statutory standard form insurance policy to the private contractual policy in Thomas, and finding itself now confronted with a request that a comparable provision be read into the Michigan statutory policy, it is understandable that this Court finds itself figuratively examining its own tail.
The plaintiff policyholder asserts, not illogically, that if the Peloso construction of the New Jersey statutory policy, which is identical with Michigan's, is sound authority for "interpreting" and "construing" a tolling provision into similar contractual policy language, surely it must be authority for "interpreting" and "construing" the same provision into the identical Michigan statute. The force of the point is not lost on today's majority who state:
"It becomes evident, however, if we agreed with defendants [that the statutory provision in question should be applied literally] that [in view of Thomas] insureds would be forced to read different meanings from substantially similar or identical language in a contractual standard form policy as compared with a statutory standard form policy. Such a result would appear illogical and contradictory."
With that forthright observation, the Court proceeds to conform the result in this case to that reached in Thomas by construing and interpreting into the statute in question the tolling provision it construed and interpreted into the contract in Thomas. It does so despite its single-sentence recognition *44 that the proper judicial function is, or ought to be, a determination of legislative intent in enacting the statute as written:
"Thus, the certified question presents an issue of statutory construction and our decision should be guided by legislative intent."
For an appreciation of the Court's understanding of that function, see footnote 5 of the Court's opinion.
Thomas is decided.[3] It suffices to say that, in my view, it is an unpersuasive analysis relying upon an inapposite authority to reach an unwarranted result. Its importance today, however, indeed its controlling influence insofar as this case is concerned, is not, I suspect, in its jurisprudential soundness or allegiance to traditional principles governing the construction of private insurance contracts, but in the fact that it relies upon the Peloso case which, while not at all in point in Thomas, although arguably analogous, is directly in point in this case. Stated otherwise, having relied upon Peloso,[4] which addressed a statutory *45 form of policy as authority for reading a tolling provision into the Thomas case contractual policy, the Court can be understood to feel obligated to follow Peloso once again in this case now that it is at least in point.
Peloso is the villain in the piece. The Court's opinion suggests rather clearly that having done what was done in Thomas, in the name of Peloso, it has no choice but to do so again here.
The fundamental error in following that course, as I see it, is that in its eagerness not to "appear illogical or contradictory", the Court completely disregards, indeed rejects, the plainly expressed intent of the Legislature in favor of the appearance of judicial consistency.
III
Essentially the same claim which is made by the plaintiff and adopted by the Court today was addressed to this Court in Dahrooge v Rochester German Ins Co, 177 Mich 442; 143 NW 608 (1913), and rejected. In that case, the Court was asked to read into the statutory form of policy then in effect, which in pertinent part was essentially identical with the statute before us today, a tolling provision which would have delayed commencement of the running of the limitation period until 60 days after the filing of the proof of loss, the date the insurance company was first obligated to make payment. The Dahrooge Court said:
"Standard policies similar to that before us have been adopted, and their use made compulsory by statute in many States. It has been repeatedly held, in passing on their various provisions, that they should be construed according to the plain meaning of the language used, and that the trend of authority is toward enforcing the *46 legislative command when clearly expressed, rather than to nullify and modify by strained construction. The provision that an action cannot be sustained `unless commenced within twelve months next after the fire' is very plain, clear, and simple language. If it was the legislative intent that this should have other than the natural meaning, it would have been a simple matter to have so provided." Dahrooge, supra, 451.
As the federal district judge who certified this case correctly observed, Dahrooge is controlling precedent. It is directly on point and, unless overruled for a compelling reason, under our historic allegiance to the doctrine of stare decisis it is precedentially binding here and should be followed. It is noteworthy that the Court today does not overrule Dahrooge, it merely denigrates it as employing "narrow reasoning" for its failure to "reconcile the obvious incongruity between the proof of loss and payment provisions, and the limitation provision of the statute."[5] The Dahrooge Court's "failure" to undertake such reconciliation was evidently its inability, like mine, to perceive that the proof of loss and payment provisions, and the limitation provision of the statute, are "incongruous", "conflicting" or "inconsistent".
The proof of loss and settlement provisions of the statutory policy provide that a proof of loss must be filed by the insured within 60 days of the loss and suit may not be brought until 60 days after the proof of loss is filed. The limitation *47 provision declares that suit upon a loss must be brought within 12 months of the loss.[6]
I am unable to see how those provisions are incongruous, inconsistent or conflicting. The first of them announces that the insurer is liable 60 days after the proof of loss is filed by the insured  a period obviously intended to afford opportunity for notification of the loss by the insured and assessment of it by the insurer. The limitation provision provides that the insured has 12 months from the date of the loss to start suit.
Where is the inconsistency?
The Court's answer is to cite the Thomas analysis that a claimant does not really have 12 months in which to start suit because he cannot sue until 60 days following filing of the proof of loss and therefore the "effect of the proof of loss and payment of claims provision [is] to substantially *48 shorten the 12-month limitation period for bringing suit". In my view, that is unsound both mathematically and analytically.
The fact that the plaintiff cannot bring suit until 60 days following filing of the proof of loss does not affect in any manner the fact that he may not bring suit later than 12 months following the loss. If the point is that the claimant is unfairly denied the opportunity to bring suit until he files the proof of loss plus 60 days thereafter, and that period is somehow deducted from the 12-month period of limitation leaving less than 12 months after the loss within which to bring suit, the point is not relevant. The Legislature has not declared that a claimant policyholder may bring suit at any time within 12 months after the loss. It has declared that the lawsuit must be brought, if at all, not later than 12 months after the loss. The Legislature has not extended to the policyholder on the one hand a promise of a 12-month period during every moment of which the claimant might bring suit and then withdrawn from him on the other hand 2 months or more at the beginning of the period during which suit may not be filed. In addition, the plaintiff does not complain in this case that it has been prejudiced in any way by an inability to bring suit during the period in which it was preparing the proof of loss and filing it, and the 60 days during which the insurance company investigation was running.
Even if the Court's reasoning were sound, that inability to file suit until the proof of loss is filed, plus 60 days, somehow reduces the cutoff period for filing suit from 12 months to a lesser period, a conclusion the logic of which escapes me, the fact is that the Legislature has so declared it.
The majority opinion suggests to me rather *49 forcefully that the Court's concern is not that the Legislature has really contradicted itself in establishing a proof of loss plus 60 days no-suit period for perfecting the claim and a 12-month limitation of action provision, but that, in the Court's view, a fairer, more desirable and more reasonable approach would be a tolling of the running of the period of limitation while the parties are negotiating a settlement of the claim. Needless to say, had the Legislature wanted to do it that way, it could easily have done so, and in that way have addressed this Court's Thomas-born concern that an innocent claimant be not "strung along" by the action of an insurer who intentionally prolongs the proof of claim and settlement negotiating process unfairly, with the result that the claimant is lulled into a false sense of security and withholds filing suit until expiration of the period of limitations. That unfair result is a very real possibility, of course, and, as the Legislature was well aware, can, and until today, has been met in this state by application of the rule of waiver and estoppel which precludes successful assertion by an insurer of the limitations provision as a defense to an otherwise late claim. Waiver and estoppel is a jurisprudentially familiar and authoritatively construed doctrine historically invoked by an innocent claimant of whom an overreaching insured has taken unfair advantage.[7] The Dahrooge Court was well aware of the doctrine and specifically addressed its applicability to the facts in that case. It concluded, after a two and one-half page discussion of the matter, that there had been no showing that the doctrine of waiver and estoppel applied, since *50 "[i]t has been frequently held that mere negotiations for an adjustment are not a waiver of limitations, especially where they do not cause delay beyond the period in which action may be brought." Dahrooge, supra, 177 Mich 454.
IV
Despite the Court's recognition that its duty is to "be guided by legislative intent" and its assertion that it is "interpret[ing] * * * the statutory policy as a whole", in my view it does neither. The analysis employed, and the result reached, demonstrate as much for two reasons:
First, the plain, simple, direct and unambiguous language of the limitation provision of the statute, whether read alone or in context with the other portions of the law, belies any suggestion that a tolling provision was impliedly enacted by the Legislature or intended by it and precludes, in the light of familiar rules of statutory construction, any interpretation or construction of the statute to create one.
Second, the history of the Michigan statute reveals that the Legislature, in enacting the statute in question, purposefully omitted a tolling provision which was part of the predecessor law. After a period of experience with an early statutory form of policy which is essentially comparable to today's law and which contained no tolling provision, the Legislature shifted to a statute with a tolling provision and still later returned once again to a statutory form of policy which contained no tolling language.
*51 A
In the statute before us, the Legislature has declared in plain and simple language that suit upon the statutory form of policy must be brought, if at all, within 12 months of the date of the loss. To repeat, the statute provides:
"No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss." MCL 500.2832; MSA 24.12832.
It is difficult to imagine statutory language more plain, direct, simple and unambiguously clear than that. It speaks of no tolling period. While presumably the Court would have no disagreement with that observation, it claims that upon a proper construction and interpretation of the statute as a whole, there emerges a legislative purpose that the tolling provision which the Court announces was intended by the Legislature all along.
It is, of course, an elemental canon of statutory construction that plain, clear and unambiguous legislative enactments need no, and should have no, construction or interpretation and are to be read and applied as written. 2A Sands, Sutherland Statutory Construction (4th ed), §§ 46.01-46.07, pp 48-68. Statutes are to be read assigning to words used their primary and generally understood meaning. The judicial function is to apply statutes as they are written, not in a manner which to the Court seems more equitable than the Legislature provided. Bankers' Trust Co of Detroit v Russell, 263 Mich 677; 249 NW 27 (1933).
"If the language employed in a statute is plain, certain *52 and unambiguous, a bare reading suffices and no interpretation is necessary." Grand Rapids v Crocker, 219 Mich 178, 182; 189 NW 221 (1922).
It is acknowledged that reasonable judges, lawyers and laymen alike can read the same statute differently and one find in the legislative language an intention that a certain circumstance obtain and another find from the same language that such was not the lawmaker's intent. I am content on this occasion, however, to leave it to the reader to determine whether the "reconciliation" analysis of the Court today is the unraveling of convoluted and obscure statutory language to reveal that in keeping with legislative intent a tolling provision has been enacted, or whether the Court is announcing instead its majority preference for an "approach", as the Peloso and Thomas courts put it, that "is more satisfactory, and more easily applied, than the pursuit of the concepts of waiver and estoppel in each of the many factual patterns which may arise". Peloso, supra. See Thomas, supra, 396 Mich 594, 596.
B
The statutory form of policy involved in this case has been widely adopted by legislatures throughout the United States. It is said to derive from the state of New York where the form was first enacted into a statute and is often referred to as the New York standard form policy.
In Proc v Home Ins Co, 17 NY2d 239, 245; 270 NYS2d 412; 217 NE2d 136 (1966), when confronted with the claim that a tolling provision should be read into the statute to delay commencement of the running of the limitation period until the cause of action accrues, the New York Court of Appeals declared:
*53 "The argument [that the 12-month period is tolled until the cause of action accrues] not only disregards the plain meaning of the policy language, but ignores both its history and the intention of those who wrote it. The Legislature, in enacting section 168 of the Insurance Law, gave careful attention to the very problem presented by this case. Considering the manner in which the phrasing evolved over the years, there cannot be any doubt that the period of limitations was meant to run from the date of the fire, even though a cause of action against the insurer had not then accrued. The court will not subvert this clearly expressed legislative design  and rewrite nearly 90 years of history  by deriving from the less specific terms of another provision * * * just the opposite intention and meaning.
"Nor do we perceive anything unfair in reaching the result we do. If conduct or action on the part of the insurer is responsible for the insured's failure to comply in time with the conditions precedent, injustice is avoided and adequate relief assured, without doing violence to the plain language used by the Legislature, by resort to traditional principles of waiver and estoppel."
In addition to the straightforward language of the statute and the acquiescence of the Michigan Legislature in this Court's Dahrooge analysis, there is still further evidence that the Legislature intended what it wrote: it experimented with a tolling provision in the predecessor statute for an extended period and voted to return to the no tolling approach of today's statute.
The 1905 statute, 1905 PA 277, which was addressed in Dahrooge, provided:
"No suit or action on this policy * * * shall be sustainable * * * unless commenced within twelve months next after the fire." (Emphasis added.)
That plain language of limitation, manifestly *54 devoid of any tolling provision, was amended in 1917 to provide:
"No suit or action on this policy, for the recovery of any claim, shall be sustainable in any court of law or equity unless all the requirements of this policy have been complied with, nor unless commenced within twelve months after the liability shall have accrued." 1917 PA 256. (Emphasis added.)
Since, under the familiar companion provision of that statute concerning proof and payment of loss, the insurer's liability was deferred until 30 days after the filing of the proof of loss, the insurer's liability accrued at the expiration of that period and the 12-month period of limitation began to run not from the date of the fire, as under the old statute, but from the later date.
After 28 years of experience with that automatic tolling provision, the Legislature, in 1945, enacted the present New York standard form policy thereby eliminating the tolling period and requiring that suit must be commenced "within twelve months next after inception of the loss". Thus, the Legislature returned to the no tolling period statutory form of limitations provision of the 1905 statute as construed in Dahrooge.[8]
In light of that deliberate legislative action, the claim that a correct interpretation or construction of the 1945 statute reveals a legislative intent to provide any tolling period, to say nothing of the one constructed today, is most unpersuasive.
V
What emerges with crystalline clarity from the *55 Court's opinion is that, given the "approach" taken in the case of the private insurance contract limitation provision in Thomas, it would be asymmetrical to fail to take the same "approach" today in the case of its statutory counterpart, viz.: insert a tolling provision. That is especially so when the principal authority relied upon in Thomas was the Peloso case construction of the New York-New Jersey-Michigan statutory form of policy.
The concern that we will "appear illogical and contradictory" if we do not follow Thomas should not be the petard upon which we hoist ourselves today. Whatever was done with respect to the private contract in Thomas, it is never illogical to exercise the judicial self-restraint necessary to forego "construction" and "interpretation" of a direct, simple, clear and unambiguous statute in order to give effect to the plainly expressed intent of the Legislature.
Perhaps the real danger in what the Court has done today is not so much in its departure from the most axiomatic of all principles of statutory construction, or in the usurpation of the legislative prerogative, as in the precedent that has been laid down for what I strongly suspect will be the inevitable next step.
What now is to stop or even delay the rewriting of all other statutes of limitations enacted by the Legislature?
A court with a fairly consistent track record of announced disapproval of statutes of limitations in general, and short ones in particular, can well be understood to have no hesitancy to construe and *56 interpret into all statutes of limitation tolling provisions which suspend the running of the statute in any case for the period between the time a claimant makes a demand upon an insurance company and the company "formally" denies liability.
In point of fact, virtually all claims of any significance in the tort law field are against insurance companies as the ultimate and real entity in interest. Experience teaches that in most tort claims, particularly those brought upon theories of products liability, malpractice, automobile negligence and design defect, there is, prior to suit, the usual procedural process of notice of claim, investigation, preliminary discovery and denial of liability. The rationale of today's decision suggests that the period of time necessary for ascertainment of the extent of a loss, presentation of a demand, investigation, settlement discussion, and formal denial of liability will need to be "reconciled" with the applicable statute of limitations in order to give the claimant the "full" period of limitations within which to bring suit, a period which, until now, has been legislatively mandated, in most instances, to run from the date of accrual of the claim  normally the date of the loss or discovery of it.
I would apply the statute as it is written because its plain, simple, direct and unambiguous language precludes the need, indeed the authority, for judicial construction or interpretation, and because the rule of Dahrooge is on point and precedentially controlling.
The question certified should be answered in the negative.
COLEMAN, C.J., concurred with RYAN, J.
NOTES
[1] GCR 1963, 797.2(a) provides:

"When a federal court or state appellate court considers a question that Michigan law may resolve and that is not controlled by Michigan Supreme Court precedent, the court may on its own motion or that of an interested party certify the question to the Michigan Supreme Court."
[2] "[N]o action `shall be sustainable in any court of law or equity unless the same be commenced within twelve (12) months next after discovery by the insured of the occurrence which gives rise to the claim * * *'." The Tom Thomas Organization, Inc v Reliance Ins Co, 396 Mich 588, 591-592; 242 NW2d 396 (1976).
[3] Compare NJ Stat Ann § 17:36-5.20 with MCL 500.2832; MSA 24.12832. MCL 500.2806(2); MSA 24.12806(2) required the defendant insurers to issue the Michigan standard policy.
[4] The standard policy contained in MCL 500.2832; MSA 24.12832 and in NJ Stat Ann § 17:36-5.20 provides a 60-day period for the insured to supply proof of loss, lines 97-99, and 60 days after proof of loss and ascertainment of the loss for the insurer to pay the claim, lines 150-156. MCL 500.2836(2); MSA 24.12836(2) requires payment within 30 days.
[5] "Whether construing statutes or contracts, courts look to the language used and the context for the purpose sought to be achieved. In interpreting a statute, a court is guided by legislative intent; in construing a contract, it looks for the intent of the parties. Courts are not less constrained in construing statutory terms than they are in construing terms agreed to by contracting parties." Tom Thomas, 596, fn 9.
[6] 1905 PA 277 provided for a limitation provision requiring suit to be brought "within twelve months next after the fire".
[7] Dahrooge v Rochester German Ins Co, 177 Mich 442; 143 NW 608 (1913), quoted from Hamilton v The Royal Ins Co, 156 NY 327; 50 NE 863 (1898). The Hamilton language, quoted in Dahrooge, forcefully set forth the statutory nature of the limitation provision to support the Hamilton court's conclusion that the saving provision applied to the statutory fire policy limitation provision. The saving provision was applied in Hamilton because the limitation provision was a statutory provision.

Today a saving provision extends the time for bringing suit under an act which contains its own statute of limitations. Lambert v Calhoun, 394 Mich 179; 229 NW2d 332 (1975).
[8] We recognize that the majority of jurisdictions have held that the limitations period runs from the date of the fire or other casualty insured against. Some courts have held that the limitation period begins to run from accrual of the cause of action. See Anno: Fire Insurance  Action  Time Period, 95 ALR2d 1023; ABA Committee on Property Insurance Law, Annotations of the 1943 Standard Fire Insurance Policy & Extended Coverage Endorsement (Chicago: American Bar Ass'n, 1977), § 22B, pp 342-362. The analysis we adopt gives full effect to the statutory provisions.

The New York Court of Appeals has held that the phrase "inception of the loss" refers to the date of the occurrence of the casualty and not the accrual of the cause of action. Proc v Home Ins Co, 17 NY2d 239; 270 NYS2d 412; 217 NE2d 136 (1966). We decline to follow that case. Proc did not address the tolling analysis we adopt. Furthermore, although our statute is the same as the New York statute construed in Proc, we need not adopt the construction applied in Proc. Michigan adopted the standard form policy prior to judicial construction by the New York Court of Appeals. See In re Rackham's Estate, 329 Mich 493; 45 NW2d 273 (1951); 2A Sands, Sutherland Statutory Construction (4th ed), § 52.02, pp 329-331.
In 1975 New York's statutory form policy was amended to increase the limitation period from 12 months to 2 years. See NY Ins Law § 168(5) (McKinney).
[9] We are obligated to attempt to reconcile inconsistent provisions of a statute so as to arrive at a meaning which gives effect to all provisions of the statute. In re Petition of State Highway Comm, 383 Mich 709, 714; 178 NW2d 923 (1970).
[10] 1956 PA 218 (Insurance Code) re-enacted the standard form policy of 1945 PA 265.
[11] Defendant Lumbermens contends that even if the statutory limitation may be tolled, plaintiff's cause of action is still barred by the limitation provision. This issue was not certified to this Court and we decline to address it. The resolution of this issue is left to the United States District Court.
[1] In his certificate filed in conformity with GCR 1963, 797.2, the federal judge has declared:

"Thereafter, the Court found for the defendants and granted their motions for summary judgment on March 6, 1980. The March 6, 1980, order and accompanying memorandum opinion * * * were accompanied by a transmittal letter suggesting that the Court would give consideration to certifying the issue involved to the Michigan Supreme Court upon the timely filing of motion for reconsideration by plaintiff Ford Motor Company.
"Ford Motor Company filed a timely motion for rehearing which the court has taken under consideration." (Emphasis added.)
[2] "We predicate our holding on reconciliation of the provisions of the policy". 396 Mich 597.
[3] RYAN, J., not participating.
[4] It appears that, like Michigan, the vast majority of jurisdictions in this country have adopted the New York Standard Form Fire Insurance Policy. See 95 ALR2d 1023. Research discloses that until today, in applying the limitation of action provision of the policy, not a single jurisdiction, save New Jersey, has adopted the tolling provision "approach" of the Peloso court.

It is noted, however, that in West Virginia the limitation period in a private contractual policy had been held to run from the date of accrual of the cause of action, not the date of the loss. In 1918, the old New York standard form policy was adopted which provided that suit must be commenced within 12 months "after the fire". In 1929, in Kirk v Firemans Ins Co, 107 W Va 666; 150 SE 2 (1929), the West Virginia Supreme Court held that the Legislature, in adopting the New York standard form policy, had adopted the previous West Virginia interpretation of "its" provisions. Thus, arguably, West Virginia could be said to represent a second jurisdiction to share the Peloso court's view.
[5] In Thomas, supra, 396 Mich 597, fn 10, the Court acknowledged the existence of the Dahrooge case and its straightforward rule but disregarded it as persuasive authority with the observation that:

"We find no Michigan case considering the analysis we adopt, reconciling the contractual terms to find that the limitation specified in the policy begins running at the date of loss or its discovery but is tolled until denial of liability by the insurer. A point `neither considered by the Court nor discussed' is not decided. Bostrom v Jennings, 326 Mich 146, 156-157; 40 NW2d 97 (1949)."
[6] "90 Requirements in The insured shall give
 immediate written
 "91 case loss occurs. notice to this Company of
 any loss, protect
 "92 the property from further
 damage,
 "93 forthwith separate the damaged and undamaged
 personal
 "94 property, put it in the best possible order,
 furnish a complete
 "95 inventory of the destroyed, damaged and undamaged
 property,
 "96 showing in detail quantities, costs, actual cash
 value and
 "97 amount of loss claimed; and within sixty days
 after the loss
 "98 unless such time is extended in writing by this
 Company, the
 "99 insured shall render to this Company a proof of
 loss * * *."

And
 "150 When loss The amount of loss for which
 this Company
 "151 payable. may be liable shall be payable
 sixty
 "152 days after proof of loss, as
 herein provided,
 "153 is received by this Company and ascertainment of
 the
 "154 loss is made either by agreement between the
 insured and
 "155 this Company expressed in writing or by the
 filing with this
 "156 Company of an award as herein provided.
 "157 Suit. No suit or action on this
 policy for the
 "158 recovery of any claim shall be
 sustainable
 "159 in any court of law or equity unless all the
 requirements of this
 "160 policy shall have been complied with, and unless
 commenced
 "161 within twelve months next after inception of the
 loss."
MCL 500.2832; MSA 24.12832.
[7] The Thomas majority criticized waiver and estoppel as an "analysis [which] results in considerable uncertainty concerning the `reasonableness' of the time remaining for suit". Thomas, supra, 396 Mich 597, fn 10.
[8] In the present statute the period of limitation runs from "inception of the loss" instead of "after the fire", as in the 1905 statute, since the statutory policy now covers other losses in addition to fire losses.