833 F.2d 1012
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Townsel HALL and Hall's Janitorial Supply Company
Plaintiffs-Appellants,
v.
STATE FARM FIRE AND CASUALTY COMPANY, Defendant-Appellee.
 No. 86-2112.
 United States Court of Appeals, Sixth Circuit.
 Nov. 17, 1987.
 
 Before NATHANIEL R. JONES, RALPH B. GUY, JR., and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiffs-appellants, Townsel Hall and Hall's Janitorial Supply Company, ("Hall" and "Hall's Janitorial Supply"), appeal the jury verdict for defendant-appellee, State Farm Fire and Casualty Company, ("State Farm"), in this action to recover the proceeds of a fire insurance policy. The appellants also appeal the judgment for defendant-appellee on its counterclaim for reimbursement of monies paid to third parties. We find no merit in appellants' contentions, therefore we affirm.
 
 I.
 
 2
 This is an action grounded in federal court on diversity, brought by the insured, Hall's Janitorial Supply, and its president and sole shareholder, Hall, to recover the proceeds from a fire insurance policy issued by State Farm on a building occupied by Hall's Janitorial Supply. The building is located at 10225 West Jefferson Avenue, River Rouge, Michigan. Both the building and its contents were substantially destroyed by a fire on December 17, 1983. A total recovery is sought by the insured in the amount of $264,136.00. This amount was unanimously determined by a three-member appraisal board which was impaneled pursuant to the insurance policy's provisions.
 
 
 3
 Prior to trial, the parties stipulated that the fire was deliberately set. Therefore, the affirmative defense of arson was employed by State Farm. State Farm asserted that Hall committed the arson by deliberately setting the fire or arranging the fire to be set and then filed a false insurance claim. Thus, State Farm asserted at trial, the insured is not entitled to recover for its loss. This claim was tried by a jury.
 
 
 4
 State Farm also counterclaimed for $40,028.27 and $17,297.60, the amounts it paid respectively to George Kramer, the co-insured land contract vendor of the building, and to the Small Business Administration, ("SBA"), a co-insured lender of money to Hall. These amounts were what Hall owed to the co-insureds at the time of the fire. This counterclaim, by stipulation, was tried to the bench and the parties agreed that the court would determine the amount of the counterclaim if the jury were indeed to hold that Hall had a guilty connection with the origin of the fire.
 
 
 5
 The eleven-day jury trial commenced on October 17, 1985. On October 31, 1985, the jury returned a special verdict against the insured. The verdict stated that Hall had a guilty connection with the deliberate setting of the fire.
 
 
 6
 In November 1985, the appellants filed a timely motion for judgment notwithstanding the verdict, or in the alternative, for a new trial. State Farm filed its response and a motion for entry of judgment on its counterclaim. On October 31, 1986, an order was entered by the district court which denied Hall's motion and granted State Farm's motion. A judgment for State Farm in the amount of $57,325.81 on the counterclaim was duly entered. On November 24, 1986, Hall filed a timely notice of appeal from both the judgment on the counterclaim and from the order denying his motion for a judgment notwithstanding the verdict.
 
 II.
 
 7
 The fire involved in this appeal occurred on Saturday night, December 17, 1983. The fire alarm was received by the River Rouge Fire Department at approximately 9:30 p.m. and their trucks were the first to arrive at the scene only moments later. They were assisted in fighting the fire by the Ecorse City Fire Department. It took the firefighters approximately one hour to enter the building because all entry doors were locked. It took approximately three hours to bring the fire under control.
 
 
 8
 A cause and origin investigation of the fire commenced and it was determined that the fire had been deliberately set and accelerants were used in its making. The fire marshal testified that the flammables had been placed on the floor directly underneath the gas line for the furnace. This placement permitted natural gas to escape which provided even more fuel for the fire.
 
 
 9
 The building was protected by a burglar alarm system which was electrically powered with a battery back-up, and could not be accidentally unplugged. It used foil breaks, door contacts and photoelectric cells to determine building entry. There were five contacted doors, two photoelectric beams, and a bell inside and outside. However, all building doors were not contacted and only the front door and two windows were tape-foiled. There were also several other unprotected places where entry was possible, including windows on the ground and roof level. Persons entering at such places would not be detected by the alarm. However, the photoelectric beams, set in the walls at three feet above floor level, emitted invisible beams of infra-red light throughout the building which would also detect movement. When the alarm was on, a person had forty-five seconds to enter the building and deactivate it without it sounding.
 
 
 10
 Hall had a key to operate the alarm system, but did not have a key to enter the alarm control box itself. On the day of the fire, Hall had entered the building at 10:30 a.m. to pick up some supplies and left shortly thereafter, activating the alarm when he left.
 
 
 11
 The alarm company did not receive any notation of an alarm the night of the fire, leading to the inference that either the alarm was not in working order or that the person who had entered the building and set the fire had an intimate knowledge of the way the system worked.
 
 
 12
 The latter inference was bolstered by the fact that the system was serviced and found to be in good operating condition approximately two months prior to the fire. Hall, however, testified that the building had been broken into at least six times prior to the fire and that the alarm had not always worked.
 
 
 13
 State Farm introduced evidence at the trial in an attempt to prove opportunity and motive, the two elements of arson in addition to incendiary origin. Opportunity was demonstrated by showing that Hall and his wife had the only keys to the building and the alarm system. Hall testified, however, that the alarm key could be copied, and at various times his drivers would have had access to the building keys. He also pointed out that there were ways to access the building without needing a key.
 
 
 14
 Motive was shown by testimony that Hall had listed his business for sale prior to the fire and that it was still so listed at the time of the fire. This was an attempt to impute a financial motive to Hall for burning the building. Hall attempted to explain this listing by stating that he felt he could make money on its sale and re-open a business elsewhere. There was also testimony by a certified public accountant that in the last quarter of 1983, Hall's business had begun to feel cash pressure and that Hall himself was not paid during November and December of that year.
 
 III.
 
 15
 The appellants contend that cumulative error in this case supports the granting of a judgment notwithstanding the verdict or a new trial. The alleged errors include the lower court's evidentiary rulings and its jury instructions. Hall also contends that his counsel was repeatedly chastised in front of the jury and that no comparable admonishments were given to State Farm's counsel. Such behavior, Hall asserts, had a prejudicial effect upon the jury.
 
 
 16
 In United States v. Kozminski, 821 F.2d 1186, 1218 (6th Cir.1987) (en banc) (Guy, J., dissenting), it was stated "[t]he standard of review on appeal of the admission of testimony is abuse of discretion. In order to determine whether the trial judge abused his discretion, we must view the record as it was at the time the ruling was made."
 
 
 17
 This court has also stated that "the determination of the extent of permissible comment and argument by counsel rests primarily in the judicial discretion of the lower court." Twachtman v. Connelly, 106 F.2d 501, 509 (6th Cir.1939). And, in Giesler v. Folsom, 735 F.2d 991, 997 (6th Cir.1984), this court held that the determination of whether the evidence presented is relevant and material is a matter within the sound discretion of the trial court and should not be overturned on appeal absent a clear abuse of discretion.
 
 
 18
 Pursuant to the above standards, we hold that the district court's evidentiary rulings and determinations and its jury instructions were proper and no prejudice resulted to the appellants.
 
 IV.
 
 19
 Appellants also allege that there was not a clear showing of Hall's opportunity and motive to set the fire and, therefore, the required elements of arson were not demonstrated. We find this contention to be without merit.
 
 
 20
 In George v. Travelers Indemnity Co., 81 Mich.App. 106, 112, 265 N.W.2d 59, 62 (1978), the court set out the elements of the civil defense of arson. The court stated:
 
 
 21
 Where an arson defense is raised by an insurer, the burden is on the insurer to prove by a preponderance of the evidence that the plaintiff set fire to the building or caused it to be set on fire.... The elements of arson may be established by circumstantial evidence.... Where there is independent evidence of the incendiary origins of a fire, Michigan courts have affirmed arson convictions based on circumstantial evidence of motive (such as insurance coupled with business difficulties) plus opportunity (such as access to the building).
 
 
 22
 (Citations omitted).
 
 
 23
 In this case, the evidence established that Hall had an opportunity to set the fire. The person responsible for the fire had access to the building and an intimate working knowledge of the alarm system. Hall fits this description.
 
 
 24
 It was also shown that Hall had a motive. The business was not doing as well financially as it had in the past and Hall was attempting to sell it at the time of the fire and, in fact, had listed it for sale through a broker when the fire occurred. In addition, Hall had been notified, three days prior to the fire, of a lawsuit pending against him over one of his previous efforts to sell his business. Also, Hall's conduct in not contacting the alarm company to determine whether the security of the building had been breached until three to four months after the fire support the inference that he had a guilty connection with the fire.
 
 V.
 
 25
 Appellants contend the district court improperly granted State Farm's counterclaim. Hall contends the SBA's claim against State Farm is barred by the one year statute of limitations provision contained in the insurance policy. Therefore, Hall argues, because the SBA did not initiate its action within one year after the loss, any payments made by State Farm to the SBA are voluntary payments which State Farm is not entitled to recover from Hall.
 
 
 26
 State Farm asserts that SBA's claim is not barred by the statute of limitations because the one-year period was tolled when State Farm received notice of the fire. Ford Motor Co. v. Lumbermens Mutual Casualty Co., 413 Mich. 22, 319 N.W.2d 320 (1982). Ford was based upon a certified question received from the United States District Court for the Eastern District of Michigan which concerned the running of this one-year statute of limitations. The court held the statute was tolled from the time the insured gives notice of the loss until the insurer formally denies liability. Ford, 413 Mich. at 38, 319 N.W.2d at 325. Here, State Farm received notification of the loss approximately three days after the fire and at no time denied liability to the SBA, whose rights under the policy are independent of Hall's Janitorial Supply. Therefore, the statute of limitations was tolled.
 
 
 27
 Also, the parties had stipulated that the counterclaim be tried to the bench and that the court would determine the amount of the counterclaim if the jury were to indeed hold that Hall had a guilty connection with the origin of the fire. It is now too late for Hall to complain about the court's granting this counterclaim.
 
 
 28
 The appellants also assert that the lower court used the improper burden of proof in entering its judgment on this counterclaim. This contention is meritless. The lower court used the "preponderance of the evidence" standard which is clearly the burden of proof applicable to cases such as this one. Hanover Fire Insurance Co. v. Furkas, 267 Mich. 14, 25, 255 N.W. 381, 385 (1934).
 
 VI.
 
 29
 In reviewing the appellants' motion for judgment notwithstanding the verdict, this court must view the evidence in the light most favorable to the other party and draw from the evidence all reasonable inferences in that party's favor. This court may not substitute its judgment for that of the jury. National Polymer Products, Inc. v. Borg-Warner Corp., 660 F.2d 171, 178 (6th Cir.1981).
 
 
 30
 Furthermore, a new trial can be properly granted only if the jury's verdict was against the great weight of the evidence, if the trial was unfair, or if there were substantial errors in the admission or rejection of evidence or in the giving or refusing to give jury instructions. See C. Wright, Law of Federal Courts Sec. 95 (1976).
 
 
 31
 Based upon these standards, we deny the appellants' motions, thus holding that they received a fair and just trial by the district court.
 
 
 32
 Accordingly, the judgment of the lower court is AFFIRMED.