*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CASSEY RENEE WILLIAMS,

        Plaintiff-Appellant,

v

AUTO-OWNERS INSURANCE COMPANY,

        Defendant/Cross-Plaintiff-Appellee,

and

CINCINNATI INSURANCE COMPANY,

        Defendant/Cross-Defendant-
        Appellee.

UNPUBLISHED
April 16, 2019

No. 341473
Ingham Circuit Court
LC No. 16-000623-NF

Before: SWARTZLE, P.J., and MARKEY and RONAYNE KRAUSE JJ.

PER CURIAM.

Plaintiff, Cassey Renee Williams, appeals as of right the trial court's order dismissing her claim for work-loss benefits under the no-fault act, MCL 500.3101 *et seq.* We affirm.

## I. BACKGROUND

Plaintiff was injured in a motor vehicle accident that took place when her friend, Megan Froehlich, drove off the roadway and struck a tree. Plaintiff was severely injured and received medical interventions for months after the accident. Plaintiff filed a lawsuit seeking work-loss benefits, naming as defendants Auto-Owners Insurance Company, the insurer of the vehicle

owned and driven by Froehlich, and Cincinnati Insurance Company, the insurer of the vehicles owned by plaintiff's mother.[1]

Plaintiff testified by deposition that she that she worked for 10 to 20 days in 2015 for Rainbow International Restoration as a general physical laborer, doing "heavy physical labor." Plaintiff described this job as an "on call" position, where she received a call when Rainbow needed her help. She further stated that, in 2016, she worked for Rainbow on only four days, on various restoration jobs during the week before her auto accident. Plaintiff testified that Rainbow paid her in cash for her work.

Plaintiff testified that the owner of Rainbow, Mike Meinzinger, asked if she would like to be a full-time employee in the future, and that she answered affirmatively. According to plaintiff, there was further discussion along those lines, but she and Rainbow reached no formal arrangement. She admitted that she never completed an employment application with Rainbow, did not receive paychecks from the company, did not report the cash she received from Rainbow as income, and that Rainbow neither withheld taxes from her cash payments nor provided her with any documents relating to taxes. Plaintiff confirmed that she knew of no documentation indicating that she was an employee of the company.

Meinzinger characterized plaintiff as a temporary employee whom he paid in cash. He testified that plaintiff did not apply for employment, was never interviewed or put through a background check, did not receive a formal offer of part- or full-time employment, was issued no tax forms, was not in the company's payroll system, and did not receive a uniform. He further explained that the company kept no personnel file or other record relating to her temporary employment. Meinzinger noted that the company neither paid unemployment insurance for plaintiff nor withheld taxes from her payments.

In April 2016, Rainbow's office manager wrote a letter regarding plaintiff's employment status before her accident, stating as follows:

> [Plaintiff] served as a temporary employee for Rainbow International of Brighton from 1/12/16 to 1/15/16. During this time, [plaintiff] worked 35.5 hours at the rate of $12.00 per hour. She was also scheduled to work the following week 1/18-1/22 and was being considered for part-time/as needed employment for future work.

A form attached to the letter indicated, under "employment status," that plaintiff was "temporarily employed" from January 12, 2016 to January 15, 2016, and indicated "n/a" under official job description.

---

[1] The trial court determined that defendant Cincinnati had priority over defendant Auto-Owners with regard to the duty to provide no-fault benefits. Because Cincinnati has not appealed that aspect of the trial court's ruling, the issue of priority is not before this Court.

Meinzinger additionally testified that, shortly before the auto accident, plaintiff obtained his permission to borrow a company car with a precise understanding of when it would be returned, but that plaintiff failed to return the car when promised. Meinzinger testified that, because of plaintiff's failure to return the company car as instructed, he resolved not to hire plaintiff for any further work.

Plaintiff testified that she was neither on pain medicine nor under any doctor-imposed work restrictions, but that the injuries resulting from her auto accident left her unable to perform the kind of heavy physical labor involved in her work for Rainbow, adding that pain in her knees thwarted an attempt to return to physical labor after the accident. But plaintiff did state that she applied for jobs and did some "light housekeeping" after the accident. She additionally stated that she stopped attending physical therapy without being discharged by her doctor because, "between the appointments for my face, my children, my house, and everything else, it was too much and overwhelming."

The trial court concluded that plaintiff failed to offer sufficient evidence to create a genuine question of material fact whether the injuries resulting from her auto accident actually caused her to suffer any work loss for purposes of benefits under the no-fault act.

II. ANALYSIS

Plaintiff argues that the trial court erroneously failed to recognize that there was a genuine question of material fact concerning whether her employment status with Rainbow, and other interrupted employment options, would have generated income but for her injuries sustained in the auto accident.

"A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App 431, 440; 814 NW2d 670 (2012). "The motion should be granted if the affidavits or other documentary evidence demonstrate that there is no genuine issue with respect to any material fact, and the moving party is entitled to judgment as a matter of law." *Miller v Purcell*, 246 Mich App 244, 246; 631 NW2d 760 (2001). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). The party opposing the motion must show the existence of a question of material fact by submitting "[a]ffidavits, depositions, admissions, and documentary evidence" whose "content or substance would be admissible as evidence to . . . deny the grounds stated in the motion." MCR 2.116(G)(6). See also *Maiden v Rozwood*, 461 Mich 109, 120-121; 597 NW2d 817 (1999).

"In general, the no-fault act is designed to achieve the expeditious compensation of damages resulting from motor vehicle accidents and to minimize administrative delays and factual disputes." *Brown v Home-Owners Ins Co*, 298 Mich App 678, 685-686; 828 NW2d 400 (2012). Under the statute, a no-fault insurer is liable for payment of work-loss benefits "consisting of loss of income from work an injured person would have performed during the first 3 years after the date of the accident if he or she had not been injured." MCL 500.3107(1)(b). "[A] party seeking work loss benefits under § 3107(1)(b) must show actual loss; a mere loss of

-3-

earning capacity is not sufficient." *Davis v State Farm Mut Auto Ins Co*, 159 Mich App 734, 738; 407 NW2d 1 (1987).

Plaintiff argues that she suffered an actual loss of income from work she would have performed for Rainbow if she had not been injured in the auto accident. In support of her position that she was employed by Rainbow in 2016, plaintiff points to her own testimony along with the letter from Rainbow's office manager recounting her hourly wage, a period during which she did some work, and her classification as a temporary employee. We agree with the trial court that the evidence on which plaintiff relies falls short of creating a genuine factual dispute.

Plaintiff did not contest any of Meinzinger's testimony indicating that the circumstances of plaintiff's work with Rainbow were not compatible with her having the status of company employee. Further, the only evidence to counter Meinzinger's unequivocal testimony that he had firmly decided against engaging plaintiff further, for reasons unrelated to the accident, was plaintiff's own speculative and wishful testimony. See *MacDonald v State Farm Mut Ins Co*, 419 Mich 146, 152; 350 NW2d 233 (1984) (holding that an intervening event that itself renders a person unable to work may disqualify that person from thereafter receiving work-loss benefits). While the office manager's note stated that, in January 2016, plaintiff "was being considered" for future work, this was entirely consistent with plaintiff's ad hoc, temporary work for Rainbow as well as Meinzinger's decision that, *after* the January work, plaintiff was no longer being considered for such work.

"[T]he Legislature intended § 3107(1)(b) to govern the amount of work-loss benefits for those employed on either a part-time or full-time basis." *Popma v Auto Club Ins Ass'n*, 446 Mich 460, 471; 521 NW2d 831 (1994). Because plaintiff was neither full-time nor part-time with Rainbow, but worked only in a "temporary" capacity, her claim for work-loss benefits cannot be squared with *Popma* or the plain language of the pertinent statute. "Statutes are to be read assigning to words used their primary and generally understood meaning." *In re Certified Question*, 413 Mich 22, 51; 319 NW2d 320 (1982). The specification in § 3107(1)(b) of the "loss of income from work an injured person would have performed" envisions the disruption of an ongoing employment relationship of a sort that did not exist between Rainbow and plaintiff, considering the evidence in the light most favorable to plaintiff.

Because the record is uncontested that plaintiff's work with Rainbow did not have the trappings of a traditional employer-employee relationship, and that plaintiff's status with Rainbow was only that of an ad hoc, temporary worker, the trial court correctly held that there was no genuine question of material fact in that regard. Plaintiff failed to show that any stream of income from employment was interrupted because of the injuries resulting from her auto accident.

Further, to the extent that plaintiff seeks work-loss benefits to cover income she might have earned, from either Rainbow or any other potential employer, had her injuries not prevented her from acting on potential employment opportunities, she is erroneously conflating work loss with loss of earning capacity. In a no-fault case concerned with the proper basis for damages, our Supreme Court took pains to observe the distinction, stating: "[D]amages for work loss consist of wages that a person 'would' have earned but for the accident, whereas loss-of-earning-

capacity damages are wages a person 'could' have earned but for the accident." *Hannay v Dep't of Transp*, 497 Mich 45, 80-81; 860 NW2d 67 (2014). The distinction is an important one because, although the no-fault act does provide remedies for work loss, see MCL 500.3107(1)(b), "damages for loss of earning capacity are not recoverable under the no-fault act." *Ouellette v Kenealy*, 141 Mich App 562, 564; 367 NW2d 353 (1984).

Affirmed.

/s/ Brock A. Swartzle
/s/ Jane E. Markey