856 F.2d 194
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Roger Lee KELLEY, Plaintiff-Appellant,
v.
ST. PAUL FIRE & MARINE INSURANCE COMPANY; Reed Stenhouse,
Ltd.; and Klinger Furs Limited, Defendants-Appellees.
 No. 87-1639.
 United States Court of Appeals, Sixth Circuit.
 Aug. 29, 1988.
 
 Before ENGEL, Chief Circuit Judge, and MILBURN, Circuit Judge, and DAVID D. DOWD, Jr., District Judge*.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Roger Kelley appeals from the summary judgment entered for the defendants-appellees in this diversity contract action seeking recovery on an insurance policy. For the reasons that follow, the judgment of the district court is affirmed.
 
 I.
 
 2
 Kelley procured a policy of insurance from appellee St. Paul Fire & Marine Insurance Company ("St. Paul") through its agent, Reed Stenhouse, Ltd. ("Stenhouse"), on April 20, 1985. The policy provided coverage for a silver fox fur coat, which Kelley placed in cold storage with appellee Klinger Furs, Limited, in London, Ontario. Kelley claims that he removed the coat from cold storage, and, on July 2, 1985, he was attacked by several unknown males in Detroit, Michigan, who absconded with, among other things, his fur coat.
 
 
 3
 Kelley asserts that three days later, on July 5, 1985, he notified both Stenhouse, St. Paul's broker-agent in Toronto, and St. Paul's claim office in Toronto of the loss of his coat three days earlier. He further alleges that he negotiated by telephone with St. Paul through its Toronto claims office from July 5, 1985, through September 6, 1985. St. Paul strenuously denies any such negotiations.
 
 
 4
 On September 6, 1985, a St. Paul claims adjuster sent a letter to Kelley notifying him that St. Paul was requesting that he sign a Reservation of Rights Agreement extending the time period for further evaluation and investigation of his claim. Kelley signed and returned the agreement on September 13, 1985, and on September 23, 1985, Kelley filed a Proof of Loss with St. Paul through a public adjuster seeking payment on his claim for the theft loss of his fur coat.
 
 
 5
 On October 30, 1985, St. Paul requested that Kelley appear for an examination under oath. On November 14, 1985, Kelley appeared at the offices of the defendants' attorneys. The examination, however, was not fruitful. Although Kelley responded to some of the early questions, he repeatedly used obscene and vulgar language. He refused to answer questions regarding the Proof of Loss he had filed. Moreover, he made continual references to the physical appearance of the defendants' female attorney and to sexual acts using obscene and offensive language, and even asked St. Paul's counsel if she wished to engage in sexual intercourse. Although St. Paul's attorney attempted to persuade Kelley to stop using obscene and vulgar language and to cooperate in the examination, her efforts were to no avail. Instead, Kelley's language and behavior became worse, and his answers were totally unresponsive. Finally, because of the fruitlessness of the examination, it was terminated by the defendants' attorney.
 
 
 6
 Because of Kelley's behavior, as well as his repeated references to leaving with the defendants' attorney, security personnel were notified of Kelley's presence. He was detained by the security officers and was questioned by the local police department concerning any outstanding warrants or criminal history. He was subsequently released, and no charges were ever filed.
 
 
 7
 On November 21, 1985, St. Paul sent a certified letter to Kelley formally denying his theft loss claim. The letter stated that the claim was denied because of Kelley's failure to respond to relevant questions at the examination under oath, and for his failure to present sufficient evidence to substantiate his claim that the coat was, in fact, stolen. Kelley did not sign for the letter until December 10, 1985. However, a copy of the letter rejecting Kelley's claim was hand-delivered to his public adjuster on November 22, 1985.
 
 
 8
 Following the rejection of his claim, Kelley continually made harassing, obscene, and threatening telephone calls to St. Paul's employees and attorneys. As a result, on January 10, 1986, St. Paul filed an action for declaratory relief on the policy and for a temporary restraining order in Oakland County, Michigan, Circuit Court. The summons and complaint were sent to a private investigator for service. However, the investigator was unable to serve Kelley, and on July 28, 1986, the Oakland County Circuit Court Clerk dismissed the action for failure to serve process.
 
 
 9
 On November 25, 1986, more than twelve months after Kelley's claim was formally denied by St. Paul, he commenced this action. Subsequent to filing of his complaint, despite his representation by counsel, Kelley continually and repeatedly telephoned St. Paul's offices and those of its attorneys with harassing and abusive telephone calls. As a result, on December 11, 1986, St. Paul filed a motion for a preliminary injunction to enjoin Kelley from contacting the defendants' employees and their attorneys. On January 8, 1987, the district court entered a preliminary injunction providing that Kelley was to desist and refrain from visiting, telephoning, or otherwise contacting St. Paul, its agents, or its attorneys.
 
 
 10
 In his complaint, Kelley asserted claims for contractual damages arising out of the alleged theft of the fur coat, violations of the Michigan Uniform Trade Practices Act, and a claim for exemplary damages because of the alleged bad faith of St. Paul. In their answer, defendants asserted that Kelley's claim was barred by the twelve-month limitation provision contained in the policy, and that he failed to comply with the provisions of the policy relating to examinations under oath. The defendants subsequently moved for summary judgment on the limitations clause and on the failure of Kelley to state a cause of action for damages. On March 23, 1987, a magistrate entered an Order staying discovery until disposition of the defendants' motions for summary judgment.
 
 
 11
 Thereafter, on June 2, 1987, the district court granted defendants' motions for summary judgment. The district court found that (1) Kelley's claim was barred by the twelve-month limitation of action clause contained in the insurance policy; (2) no private right of action existed under the Uniform Trade Practices Act; (3) Kelley's complaint was completely void of the necessary allegations for a claim of bad faith refusal to settle; and (4) Kelley failed to make any allegations which would subject defendant Stenhouse to liability on any agency theory or otherwise.
 
 
 12
 On June 24, 1987, Kelley filed an untimely motion to alter and set aside the summary judgment and requested a rehearing or reconsideration pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. Kelley's counsel admitted that the motion was untimely, but contended that the district court could still hear the motion because he was not notified of the judgment within ten days. Kelley's counsel claimed that he had moved his office and that the district court clerk sent the notice of judgment to the wrong address.
 
 
 13
 On June 30, 1987, while the untimely motion for reconsideration was pending, Kelley filed a notice of appeal from the June 2, 1987, order granting the defendants' motion for summary judgment and dismissal. While not discussing the timeliness of the motion, the district court, in an Order and Opinion on July 28, 1987, granted Kelley's motion for reconsideration. After reconsideration, the district court again granted the defendants' motions for summary judgment and dismissal. No subsequent notice of appeal was filed by Kelley.
 
 
 14
 Kelley raises two issues on appeal. He contends (1) that the district court erroneously held that the action was time-barred by the policy's twelve-month limitations period; and (2) that the magistrate's order staying discovery until the defendants' motion for summary judgment was decided denied him due process of law.
 
 II.
 A. Jurisdiction
 
 15
 Kelley's untimely Rule 59(e) motion for reconsideration and the district court's subsequent granting of that motion subsequent to a notice of appeal raise several jurisdictional issues which the parties have surprisingly failed to address. In order to perfect an appeal to this court, a party must file a notice of appeal within thirty days from the entry of final judgment as computed according to Federal Rule of Civil Procedure 6(a). See Fed.R.App.P. 4(a). "The filing of a notice of appeal is an event of jurisdictional significance--it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982). Any action of the district court pertaining to matters involved in the appeal is null and void and will be vacated. See Rucker v. United States Dept. of Labor, 798 F.2d 891 (6th Cir.1986); First Nat'l Bank v. Hirsch, 535 F.2d 343 (6th Cir.1976); Keohane v. Swarco, Inc., 320 F.2d 429 (6th Cir.1963), aff'd, 328 F.2d 615 (6th Cir.1964).
 
 
 16
 However, a timely filed motion to alter or amend judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure tolls the running of time limitations for filing notice of appeal until the district court rules or otherwise disposes of the motion. Fed.R.App.P. 4(a)(4). See Griggs, 459 U.S. at 60-61; Denley v. Shearson/American Express, Inc., 733 F.2d 39, 41 (6th Cir.1984) (per curiam). Any notice of appeal filed while a Rule 59(e) motion is pending is simply of no effect; it is a nullity. Fed.R.App.P. 4(a)(4). See Griggs, supra.
 
 
 17
 It is only a timely motion to alter or amend judgment, however, that tolls the time for noticing an appeal. See, e.g., United States v. Valdosta-Lowndes County Hosp. Auth., 668 F.2d 1177 (11th Cir.1982). Rule 59(e) explicitly states that the motion "shall be served not later than 10 days after entry of the judgment." Fed.R.Civ.P. 59(e). Rule 6(b) specifically provides that a district court "may not extend the time for taking any action under Rule ... 59(b)," and courts have uniformly held that the ten-day period may not be enlarged under any circumstances. See, e.g., Elias v. Ford Motor Co., 734 F.2d 463, 466 (1st Cir.1984); Textile Banking Co. v. Rentschler, 657 F.2d 844, 849 (7th Cir.1981); Scola v. Boat Frances R., Inc., 618 F.2d 147, 153 (1st Cir.1980).
 
 
 18
 Thus, in light of the clear precedent, only the district court's order of June 2, 1987, is properly before this court. As Kelley's motion pursuant to Rule 59(e) was untimely, it was of no effect. The district court could not extend the ten-day time period so that it could hear the motion. Thus, the district court's actions on that motion are a nullity. Moreover, the filing of notice of appeal while the untimely Rule 59(e) motion was pending acted to divest jurisdiction from the district court. Therefore, even if this court were to construe Kelley's motion to reconsider as a Federal Rule of Civil Procedure 60(b) motion, the district court's order granting the reconsideration and subsequently re-entering summary judgment is null and void as being rendered without jurisdiction. The only order before this court on appeal is the district court's order of June 2, 1987, granting summary judgment for the defendants.
 
 B. Limitations
 
 19
 The insurance policy in question in this appeal provides in relevant part:
 
 
 20
 6. No suit, action or proceeding for the recovery of any claim under this policy shall be sustainable in any court of law or equity unless the same be commenced within twelve (12) months next after discovery by the Insured of the occurrence which gives rise to the claim.
 
 
 21
 Provided, however, that if by the laws of the Province within which this policy is issued such limitation is invalid, then any such claims shall be void unless such action, suit or proceeding be commenced within the shortest limit of time permitted by the laws of such Province to be fixed herein.
 
 
 22
 The parties to this appeal do not dispute that there is no applicable law which would render the twelve-month limitation provision contained in the policy invalid. Moreover, there is no dispute that Kelley filed suit more than twelve months after the occurrence which gave rise to his claim--the assault and theft in Detroit on July 2, 1985.
 
 
 23
 On appeal, however, Kelley contends that the district court erroneously applied Michigan's tolling principle, and erroneously failed to consider the doctrines of estoppel and waiver. Michigan courts have held that "[t]he period of limitation begins to run from the date of the loss, but the running of the period is tolled from the time the insured gives notice until the insurer formally denies liability." Ford Motor Co. v. Lumbermens Mut. Casualty Co., 413 Mich. 22, ----, 319 N.W.2d 320, 325 (1982); Tom Thomas Org. v. Reliance Ins. Co., 396 Mich. 588, 242 N.W.2d 396 (1976).
 
 
 24
 In its June 2, 1987, order, the district court used the October 23, 1985, date of Kelley's filing of his Proof of Loss as the date on which tolling began. As Kelley correctly contends, he asserts in his complaint that he notified the defendants on July 5, 1985. However, even if this court accepts Kelley's contention that he gave notice on July 5, 1985, as true, as it must in considering a motion for summary judgment, this action was not filed within twelve months from the formal denial of his claim. The parties do not dispute that the insurance company formally denied Kelley's claim on November 21, 1985, and that Kelley's action was not filed until November 25, 1986. Thus, deducting the three days between the date of occurrence and the date of notice as alleged by Kelley, his action would have to have been filed on or before November 18, 1986, to be timely. Clearly, the action was untimely even under the facts as alleged by Kelley in his complaint.
 
 
 25
 Kelley further contends, however, that the date of formal denial should not be November 21, 1985, but the date he actually received notice, December 10, 1985. We disagree. First, that issue was not raised below and, therefore, will not be considered by this court. Moreover, there is no dispute that Kelley's agent, Midwest Adjusters, Inc., was provided notice of denial on November 22, 1985.
 
 
 26
 Finally, even if we consider this argument, we still find it without merit. In Lumbermens, the Michigan Supreme Court stated the rule to the effect that tolling ends when "the insurer formally denies liability." 319 N.W.2d at 325. The parties do not dispute, and in fact Kelley concedes in his brief, that the insurance company formally denied his claim on November 21, 1985. As the Michigan Supreme Court has made clear, the tolling period ends not on the date that notice is provided to the insured, but on the date that the insurance company formally denies coverage.
 
 
 27
 Kelley additionally contends on appeal that the twelve-month limitation period was tolled an additional ninety days because of the declaratory judgment action filed by St. Paul. Michigan's tolling statute, M.C.L.A. Sec. 600.5856, provides as follows:
 
 The statutes of limitation are tolled when
 
 28
 (1) the complaint is filed and a copy of the summons and complaint are served on the defendant, or when
 
 
 29
 (2) jurisdiction over the defendant is otherwise acquired, or when,
 
 
 30
 (3) the complaint is filed and a copy of the summons and complaint in good faith, are placed in the hands of an officer for immediate service, but in this case the statute shall not be tolled longer than 90 days thereafter.
 
 
 31
 Initially, as the district court properly found, section 5856 is inapplicable, as it is used only "when the plaintiff makes a false start within the time limits of the statute of limitations and subsequently learns that the action cannot continue." Mair v. Consumers Power Co., 419 Mich. 74, 83, 348 N.W.2d 256, 260 (1984). Thus, the statute simply does not apply to the present case, as it specifically refers to actions for recovery of claims by the plaintiff-insured and not the defendant-insurer. Moreover, the tolling statute relates to statute of limitations, and the limitations provision relied on by St. Paul is contractual, not statutory.
 
 
 32
 Finally, even if the statute were applicable, it would not apply because Kelley concedes that service was never perfected and jurisdiction was never acquired over him. Under Michigan law, it is quite clear that a statute of limitations is not tolled by the mere filing of an action, but requires that service of process be effectuated. St. Paul never placed a copy of the summons and complaint in the hands of an officer for immediate service. Rather, it placed a copy of the summons and complaint in the hands of a private process server who was never able to obtain service upon Kelley. Thus, the tolling statute would not provide relief even if it were applicable to the present controversy. See Sanderfer v. Mt. Clemons General Hosp., 105 Mich.App. 458, 306 N.W.2d 322 (1981) (per curiam); Hoseney v. Zantop, 17 Mich.App. 141, 169 N.W.2d 124 (1969).
 
 
 33
 Kelley additionally contends that the behavior of St. Paul constituted a waiver and estoppel so as to preclude it from asserting a contractual limitations defense. In support of his position that there are disputed material facts, Kelley relies upon (1) the summoning of police and his detention after his examination under oath, which he contends could reasonably have caused him to delay asserting his rights under the policy; (2) his allegations that there were negotiations between the parties after the claim was rejected; and (3) his contention that they failed to provide him with the Proof of Loss.
 
 
 34
 Initially, we note that the district court did erroneously fail to consider waiver and estoppel in its order of June 2, 1987. However, we conclude that there is simply no basis in law to support waiver and estoppel, even if the facts are construed in the light most favorable to the plaintiff.
 
 
 35
 In Michigan, in order to preclude the use of the statute of limitations defense on an estoppel theory, "a plaintiff must allege action by the defendant, such as concealment of a cause of action, misrepresentation as to the time in which an action may be brought, or an inducement to refrain from bringing an action." Compton v. Michigan Millers Mut. Ins. Co., 150 Mich.App. 454, 458, 389 N.W.2d 111, 112 (1986) (per curiam). In the present case, Kelley's contentions regarding the calling of the police are of no merit, as that event occurred during the time in which the statute of limitations was already being tolled. The only applicable time period to consider the estoppel or waiver arguments would be after the November 21, 1985, formal denial of Kelley's claim.
 
 
 36
 Moreover, the police report in question simply indicates that the police were called to the building because of Kelley's conduct during and after the examination. No charges were ever filed, and St. Paul never attempted to pursue a criminal prosecution against Kelley for his behavior at the examination. The mere fact that the police were called to protect the attorney and court reporter does not in any way indicate that St. Paul concealed Kelley's cause of action or misrepresented to him at any time about the period in which he was required to bring suit.
 
 
 37
 Kelley also contends that St. Paul waived its right to rely on the statute of limitations provision. Under the law of Michigan, negotiations or dilatory tactics on the part of an insurance company intended to induce an insured to forestall commencement of an action on an insurance policy constitutes a waiver of the limitations defense. See Compton, supra. However, there is no support in the record for this defense. Kelley claims that there were negotiations subsequent to the November 21, 1985, denial of his claim. However, the only objective proof he can provide is a January 7, 1987, letter from Jerome Hoffman of St. Paul. That letter does not, as Kelley claims, support his arguments that there were negotiations. First, the letter was written in response to numerous harassing telephone calls to Hoffman in St. Paul, Minnesota, wherein Kelley indicated that he would "continue to harass and call everyone involved in the claim" and represented to Hoffman that "I got your 800 number, sucker." Far from indicating that St. Paul was negotiating with Kelley, the letter informs Kelley to stop calling St. Paul and to make any future inquiries concerning the status of his claim to St. Paul's attorneys. Therefore, the letter does not offer any objective support for Kelley's contention that he was involved in negotiations with St. Paul subsequent to the denial of his claim.
 
 
 38
 Finally, Kelley claims that the failure of St. Paul to supply him with a Proof of Loss waived any reliance on the limitations period. However, as indicated above, the time during which Kelley claims he was being denied a Proof of Loss occurred at the time during which the limitations provision was already being tolled from July 5, 1985, to November 21, 1985, when the claim was denied after a Proof of Loss was supplied.
 
 
 39
 Finally, Kelley contends that the failure of St. Paul to advise him at his examination under oath that he had a right to counsel constituted a waiver. However, we again reiterate that this occurred during the time in which the limitations period was already being tolled.
 
 C. Due Process
 
 40
 For the first time on appeal, Kelley alleges that he was denied "due process of law" because a magistrate entered a "protective order" on March 23, 1987, staying discovery until the defendants' motion for summary judgment was determined. As this argument was not raised in the lower court, we will not consider this issue on appeal. However, were we to consider it, we would find this argument to have no merit.
 
 III.
 
 41
 Upon consideration of the entire record and the briefs filed herein, we find that the district court properly concluded that the defendants were entitled to summary judgment as a matter of law. Accordingly, the judgment of the district court entered on June 2, 1987, is AFFIRMED.
 
 
 
 *
 Honorable David D. Dowd, Jr., United States District Court for the Northern District of Ohio, sitting by designation