Jose JIMENEZ, Plaintiff,

v.

**ALLSTATE INDEMNITY COMPANY,**
Defendant.

Case No. 07–cv–14494.

United States District Court,
E.D. Michigan,
Southern Division.

April 19, 2011.

Jason J. Thompson, Lisa R. Mikalonis, Henri O. Harmon, Sommers Schwartz, P.C., Southfield, MI, Michael H. Fabian, Patrick A. King, Fabian, Sklar, Farmington Hills, MI, Mark R. Miller, Wexler Wallace, Chicago, IL, for Plaintiff.

Harold D. Pope, III, Jaffe, Raitt, Southfield, MI, Mark L. Hanover, Sonnenschein, Nath, Chicago, IL, for Defendant.

### OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS (docket no. 75) AND GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION (docket no. 76)

STEPHEN J. MURPHY, III, District Judge.

In this proposed class action, plaintiff Jose Jimenez alleges that defendant Allstate Indemnity Company ("Allstate") underpaid his insurance claim. Before the Court is Jimenez's motion to reconsider the Court's order limiting the scope of any future class, as well as Allstate's motion for judgment on the pleadings. The Court ordered supplemental briefing on whether underpayment of an insurance claim could constitute a denial of liability for purposes of tolling the one-year limitations period for bringing actions, and, if so, whether and when Allstate formally denied liability in this case. The parties obliged, and provided supplemental briefing. A hearing on the matter is not necessary. E.D. Mich. 7.1(f)(2). For the reasons stated below, the Court will deny Allstate's motion for judgment on the pleadings, will grant Jimenez's motion for reconsideration, and will reverse its order limiting the scope of any future class to exclude Michigan policyholders with losses before October 22, 2006.

### I. Allstate's Motion for Judgment on the Pleadings

■ Allstate seeks a judgment on the pleadings, on the ground that Jimenez's claims are barred because he did not file

his action within one year of the date of loss as required by both Allstate's policy and Mich. Comp. Laws § 500.2833(1)(q).[1]

■ Rule 12(c) of the Federal Rules of Civil Procedure provides that "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). When matters outside the pleadings are considered, however, the motion must be treated as one for summary judgment under Rule 56, and the parties must be given time to present all materials relevant to the motion. Fed.R.Civ.P. 12(d). Because materials outside the pleadings are considered here, Allstate's motion is one for summary judgment. The parties have been given an opportunity to submit all relevant materials. "Summary judgment is proper if the evidence, taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law." *Schreiber v. Moe*, 596 F.3d 323, 329 (6th Cir.2010) (citation and internal quotation marks omitted). Whether an action is barred by the passage of time is a question of law to be answered by the court. *Friends of Tims Ford v. Tenn. Valley Auth.*, 585 F.3d 955, 964 (6th Cir.2009); accord *McKiney v. Clayman*, 237 Mich. App 198, 201, 602 N.W.2d 612 (1999).

The timeline of events is undisputed. On June 11, 2006, Jimenez suffered a loss under his policy with Allstate. He notified Allstate of the loss on or around June 15, 2006. On November 6, 2006, Allstate's claim adjuster spoke with Jimenez's counsel on the telephone and offered $48,000 to cover the loss. Counsel rejected the offer and sought the policy's liability limit of $150,000. On November 20, 2006, Allstate sent Jimenez's counsel a letter and a check in the amount of $48,000, which Jimenez cashed on December 6, 2006. The letter stated:

> At this time Allstate Insurance Company will issue a check for the Market Value on the home at 9660 Graham Str. in Detroit, Michigan 48209. I have included the summary amount page for $48,000 as provided to us by Concord Title & Appraisal Company. You will note that I had previously faxed you the appraisal in whole.
>
> Allstate Insurance Company is still awaiting verification on the issue of lost rent, as well as receipts of the repairs to the home that you are claiming. We also have notified the City of Detroit regarding Public Act 495. If they request, we also will issue the necessary funds direct to them.

Letter of November 20, 2006 (docket no. 87, ex. 3). Jimenez sought additional payment for his claim. Finally, on February 2, 2007, Allstate issued a letter including the following statement: "Since you have not provided Allstate Insurance Company with a market value that disputes the one

---

**1.** Allstate's policy provides:

**Action Against Us**
No suit or action may be brought against us unless there has been full compliance with all policy terms. Any suit or action must be brought within one year after the date of loss. In the event we formally deny liability, the time for commencing a suit or action is tolled from the time you notify us of the loss until we formally deny liability.
Policy Endorsement (docket no. 1, Document Continuation, at 14 of 21).

Michigan law requires that every fire insurance policy include the following provision or a substantially similar provision:
That an action under the policy may be commenced only after compliance with the policy requirements. An action must be commenced within 1 year after the loss or within the time period specified in the policy, whichever is longer. The time for commencing an action is tolled from the time the insured notifies the insurer of the loss until the insurer formally denies liability.
Mich. Comp. Laws § 500.2833(1)(q).

we provided to you [in the amount of $48,000], we stand by this professional evaluation of this property." Letter of February 2, 2007 (misdated 2006) (docket no. 84, ex. Q). Jimenez filed this action on October 22, 2007.

For the reasons stated below, the Court concludes that Jimenez's action is timely regardless of whether Allstate ever formally denied liability.

## A. If Allstate Has Formally Denied Liability, Jimenez's Action is Timely

Under the terms of Allstate's policy, Jimenez had to file suit within one year of his loss. Specifically:

**Action Against Us**

No suit or action may be brought against us unless there has been full compliance with all policy terms. Any suit or action must be brought within one year after the date of loss. In the event we formally deny liability, the time for commencing a suit or action is tolled from the time you notify us of the loss until we formally deny liability.

Policy Endorsement (docket no. 1, document continuation, at 14 of 21).

■ Allstate contends that since Jimenez filed suit on October 22, 2007, more than one year after his loss (on June 11, 2006), his action is barred. Further, Allstate argues, the tolling provision does not apply here because the provision is conditioned upon Allstate denying liability, which it never did. Both in the briefing and at the hearing on Allstate's motion, Jimenez and Allstate agreed that Allstate had never denied liability. Counsel agreed that Allstate had conceded liability and only disputed its extent. The parties equated a denial of liability with a denial of coverage entirely. The Court improvi-

dently adopted this agreement in ruling on Allstate's motion to limit the scope of any class. If that were the end of the matter, Jimenez's action would be barred and Allstate would be entitled to judgment as a matter of law. The Court's recent independent research on the issue, however, has revealed that that a denial of liability encompasses more than just a denial of coverage; denying liability includes underpaying a claim.

The Michigan Court of Appeals' decision in *Bourke v. N. River Ins. Co.*, 117 Mich. App. 461, 324 N.W.2d 52 (1982) (per curiam), illustrates the principle. There, defendant North River Insurance Company's claim adjuster notified the plaintiffs in the field that $500 was all it would offer for their loss. *Id.* at 463, 324 N.W.2d 52. The plaintiffs believed their loss totaled $45,000, and sued North River for underpayment three years after the loss. *Id.* at 469, 324 N.W.2d 52. After losing at trial, North River argued on appeal, as it did unsuccessfully in the trial court, that the plaintiffs' claim was barred since it was brought outside the policy's one-year provision for filing an action. The court of appeals disagreed, and affirmed the trial court's ruling on the issue. Although the limitations provision did not expressly allow tolling, the court followed the Michigan Supreme Court's decision in *Ford Motor Co. v. Lumbermens Mut. Cas. Co. (In re Certified Question)*, 413 Mich. 22, 38, 319 N.W.2d 320 (1982), which construed the statutory limitations provision to include the following language as a matter of law:

The period of limitations begins to run from the date of loss, but the running of the period is tolled from the time the insured gives notice until the insurer formally denies liability.[2]

Laws § 500.2833(1)(q).

---

**2.** The Michigan legislature later codified the Supreme Court's ruling. *See* Mich. Comp.

*Bourke,* 117 Mich.App. at 468, 324 N.W.2d 52 (quoting *Ford Motor Co.,* 413 Mich. at 38, 319 N.W.2d 320). The court of appeals held that while North River had denied all liability in excess of $500, it had never *formally* done so, so the one-year period remained tolled from the time the plaintiffs provided North River with notice of the loss. *Id.* at 470, 324 N.W.2d 52. Since the plaintiffs gave notice within a few days of the loss, *id.* at 468, 324 N.W.2d 52, the one-year period had not expired by the time the plaintiffs filed the action, rendering it timely.

The court contrasted North River's conduct with that of co-defendant Travelers Insurance Company, who, unlike North River, *formally* denied liability by sending a letter to the plaintiff explaining that it would not increase its offer of $500, and that the plaintiffs' only available remedy was filing a lawsuit. *Id.* at 469, 324 N.W.2d 52. The court of appeals agreed with the trial court that Travelers had denied liability by conceding coverage but offering no more than $500. Both insurance carriers had denied liability by paying less than the plaintiffs' requested amount, but only Travelers had done so formally, thereby ending tolling. Presumably then, had North River been as formal as Travelers was in its decision to pay no more than $500, the plaintiffs' action against North River would also have been barred. *Bourke* thus demonstrates that denial of liability is broader than denial of coverage, and includes underpayment of a claim. In other words, a denial of liability includes a denial of any *further* liability above the amount offered for the loss.

Allstate resists this reading of *Bourke.* According to Allstate, North River's *de minimis* offer of $500 was really a denial of coverage, given that the plaintiffs had sought $45,000 for their loss—far in excess of North River's offer of $500—so it was entirely appropriate for the court to find that the one-year period had been tolled.

Allstate misreads *Bourke.* North River "estimated *the damage* at $550." *Id.* at 468, 324 N.W.2d 52 (emphasis added). Travelers too estimated the loss at $550. *Id.* North River's offer of $500 ($550, less a $50 deductible) was not a *de minimus* offer; it was a bona fide offer based on its estimate of the loss. In fact, the estimate proved fairly accurate. The jury concluded that the amount of the loss was around $800. *Bourke,* 117 Mich.App. at 463, 324 N.W.2d 52. The only evidence supporting the plaintiffs' loss estimate of $45,000 was testimony from an unlicensed civil engineer, which testimony the jury rejected. *Id.* at 464–65, 324 N.W.2d 52. And as the court of appeals recognized, "the overwhelming weight of the evidence was in favor of defendant's claim that the damage was slight." *Id.* at 466, 324 N.W.2d 52. Therefore, North River's offer to pay $500 to satisfy the plaintiffs' claim was based on its estimate of the loss, was not *de minimis,* and was not tantamount to a denial of coverage.

■ Having concluded that underpayment constitutes a denial of liability, the Court turns now to whether Allstate ever formally denied liability in this case. If Allstate did, its limitations provision and the statutory provision permit tolling from the time Jimenez notified Allstate of his loss to the time Allstate formally denied liability and the action is timely. If it didn't, under Allstate's limitations provision, there is no tolling. And because Jimenez filed his action more than one year after his loss, the action would be barred. *See* Order of September 15, 2010, 2010 WL 3623176, *10–12 (docket no. 74).

■ "The use of the term 'formal' . . . implies something more than a verbal denial by an adjuster in the field." *Bourke,* 117 Mich.App. at 470, 324 N.W.2d 52. A denial need not be written to be formal, *id.* at 470, 324 N.W.2d 52, but it must be

explicit. *See Mt. Carmel Mercy Hosp. v. Allstate Ins. Co.*, 194 Mich.App. 580, 587, 487 N.W.2d 849 (1992). It must "unequivocally impress[ ] upon the insured that the extraordinary step of pursuing relief in court must be taken." *Lewis v. Detroit Auto. Inter–Ins. Exch.*, 426 Mich. 93, 101, 393 N.W.2d 167 (1986), *overruled on other grounds by Devillers v. Auto Club Ins. Ass'n*, 473 Mich. 562, 702 N.W.2d 539 (2005). Under Michigan law then, "a 'formal denial' must be explicit and direct." *McNeel v. Farm Bureau Gen. Ins. Co.*, 289 Mich.App. 76, 111, 795 N.W.2d 205 (2010) (Kelly, K.F., J., dissenting). *Bourke* found Travelers' denial of liability sufficiently formal where Travelers sent a letter on corporate letterhead, "stating that it would not increase its offer, would not submit the claim to arbitration, and that plaintiffs' remedy was in a court of law." *Bourke*, 117 Mich.App. at 469, 324 N.W.2d 52.

Neither Jimenez nor Allstate take a definitive position on when Allstate formally denied liability in this case. Allstate asks the Court to conclude that it formally denied liability since "at no time did [it] waiver from its position that it would only pay $48,000 on the claim," but does not indicate *when* the denial occurred. Jimenez contends that the earliest Allstate could have formally denied liability was when it sent Jimenez a check for $48,000, along with a letter, on November 20, 2006.

■ Having reviewed the undisputed timeline of events and the documents submitted in the supplemental briefing, the Court finds that Allstate formally denied liability on February 2, 2007, when Senior

Claims Service Adjuster Bob Goeman sent Jimenez a letter that closed with the following sentence: "Since you have not provided Allstate Insurance Company with a market value that disputes the one we provided to you, we stand by this professional evaluation [of $48,000] of this property." In the Court's view, this statement was sufficient to place Jimenez on notice that Allstate would not supplement its payment of $48,000, and that that Jimenez's next move was a lawsuit.[3] Therefore, the one-year period began on June 11, 2006 and was tolled four days later, on June 15, 2006, when Jimenez provided notice of the loss. The period began running again on February 2, 2007, when Allstate formally denied further liability in its letter to Jimenez. Therefore, only about around four days of the period had run before the period was tolled, giving Jimenez approximately 360 days from February 2, 2007 to bring his lawsuit. Jimenez filed suit on October 22, 2007, well within 360 days after February 2, 2007. Accordingly, his action is timely.

**B.** *If Allstate Has Not Formally Denied Liability, Jimenez's Action is Timely*

■ Alternatively, if Allstate's letter of February 2, 2007 is not sufficiently explicit to give Jimenez notice that it was denying further liability, or if, as Allstate contends, underpayment is not a denial of liability, and the result under both scenarios is that Allstate has never formally denied liability, Jimenez's lawsuit is still timely. Allstate's argument from the beginning has been that it has never denied liability in this case, formally or otherwise. Although, the

---

**3.** The only other contender for a formal denial is Allstate's letter of November 20, 2006. But the letter did not impress upon Jimenez that Allstate was finished considering his claim. Specifically, the letter states, "Allstate Insurance Company is still awaiting verification on the issue of lost rent, as well as receipts of the repairs to the home that you are claiming." This sentence implies that it will still consider making additional payments if further verification of the loss is made. Thus, the letter was not a formal denial of liability.

Court disagrees (as discussed above), even if Allstate is correct on this score, Jimenez's action is still timely.

If the Court applies Allstate's limitation provision to Allstate's contention that it never denied liability, Jimenez's claim is barred because he brought the action more than one year after the loss and he is not entitled to tolling. *See* Order of September 15, 2010, 10–12 (docket no. 74) (noting that Allstate's policy conditions tolling of the limitation period on Allstate formally denying liability). But that does not end the analysis. As explained more fully below, the problem with this argument is that Allstate's limitations provision conflicts with the limitations provision Michigan law requires all fire insurance policies to include. The result is that Allstate's provision is void and the mandatory provision takes its place. And under the mandatory provision, the limitations period remained tolled from the time Jimenez gave notice until October 22, 2007, when Jimenez filed the action. Even if Allstate never formally denied liability, which it did, Jimenez's lawsuit is still timely and Allstate's motion must be denied.

Michigan law requires fire insurance policies to contain certain provisions. Mich. Comp. Laws §§ 500.2806, 500.2833(1); *see also Davis v. Nat'l Am. Ins. Co.*, 78 Mich.App. 225, 230, 259 N.W.2d 433 (1977) (stating that provisions made mandatory by Mich. Comp. Laws § 500.2806 are judicially applied to an insurance policy even if omitted by the parties). Contractual provisions that are contrary to the mandatory provisions are "absolutely void," and the policy is enforced without regard to the void provision, as if the mandatory provision were expressly included in the policy. Mich. Comp. Laws § 500.2860; *see, e.g., Randolph v. State Farm Fire & Cas. Co.*, 229 Mich.App. 102, 105–07, 580 N.W.2d 903 (1998) (finding that contractual limitations

provision that did not provide for tolling was void, and mandatory limitation provision allowing tolling was substituted by operation of law); *see also Rory v. Continental Ins. Co.*, 473 Mich. 457, 470, 703 N.W.2d 23 (2005) (unambiguous contractual provision providing for a shortened period of limitations must be enforced as written *unless the provision would violate law* or public policy).

One mandatory provision limits the time in which an insured may bring suit. Specifically, all fire insurance policies must contain the following provision:

> That an action under the policy may be commenced only after compliance with the policy requirements. An action must be commenced within 1 year after the loss or within the time period specified in the policy, whichever is longer. The time for commencing an action is tolled from the time the insured notifies the insurer of the loss until the insurer formally denies liability.

Mich. Comp. Laws § 500.2833(1)(q).

Although Allstate's limitation provision is similar to the mandatory statutory provision, it differs in one very important respect. Allstate's tolling provision is made conditional upon Allstate formally denying liability: "*In the event we formally deny liability,* the time for commencing a suit or action is tolled from the time you notify us of the loss until we formally deny liability." The statutory provision, by contrast, includes no condition on tolling: "The time for commencing an action is tolled from the time the insured notifies the insurer of the loss until the insurer formally denies liability." The two provisions are irreconcilable, as demonstrated by the different outcomes produced here depending on which provision is applied:

- Applying the statutory provision, the period is tolled from the time of notice until Allstate formally denies liability.

Since Allstate has yet to do so, the period never expired before Jimenez filed suit, making the action timely.

- Applying Allstate's provision, however, the period has never been tolled because Allstate did not formally deny liability. The one-year period expired one year after the loss, well before Jimenez filed his action, making it untimely.

Because the provisions are in conflict, Allstate's provision is "absolutely void." Mich. Comp. Laws § 500.2860.

In the absence of a valid limitations provision in Allstate's insurance policy, the Court must read the statutory provision into the policy. *See* Mich. Comp. Laws § 500.2860; *Randolph,* 229 Mich.App. at 107, 580 N.W.2d 903 ("In this case, where there is no applicable limitation period found within the policy [because the policy's limitation period is void], we will read the mandatory, statutory limitation provision into the insurance contract."). Applying the statutory provision in Mich. Comp. Laws § 500.2833(1)(q), Jimenez's claim is not barred. Again, without the clause "in the event we formally deny liability" preceding the tolling provision, tolling occurs from the time notice of the loss is given until there is a formal denial of liability. Because, as the Court presently assumes, Allstate has not formally denied liability, the one-year period was tolled from June 15, 2006, when Jimenez gave notice—at which time only four days of the one-year period had elapsed—until the time he filed his lawsuit. Therefore, his action was timely.

Allstate has two responsive arguments, neither of which the Court finds persuasive. First, Allstate argues that both its contractual provision and the mandatory provision condition tolling upon a formal denial of liability. While that is true with the contractual provision, that is certainly not true with the mandatory provision.

Unlike the contractual provision, the mandatory provision contains no language that limits its applicability to situations where there is a formal denial of liability; it applies in *all* cases, whether or not there is a formal denial of liability. The reference to "formal denial of liability" at the end of the third sentence refers to a period in time, not a condition upon applicability: "The time for commencing an action is tolled from the time the insured notifies the insurer of the loss *until* the insurer formally denies liability." Mich. Comp. Laws § 500.2833(1)(q) (emphasis added).

■ Second, Allstate argues that the contractual provision effectuates the purpose of the statute and that *not* reading the tolling provision as conditional upon a denial of *coverage*—as its contractual provision does—leads to the absurd result that the period for suing for underpayment remains open indefinitely. It cites *United States v. Branson,* 21 F.3d 113, 116 (6th Cir.1994), and *Jennings v. Southwood,* 446 Mich. 125, 133, 521 N.W.2d 230 (1994), for the proposition that statutes should be interpreted to avoid unreasonable results whenever possible. But this canon of construction is always secondary to the command that the plain and unambiguous language of the statute controls. *See Mich. Dep't of Transp. v. Tomkins,* 481 Mich. 184, 191, 749 N.W.2d 716 (2008) ("Where the statute unambiguously conveys the Legislature's intent, 'the proper role of a court is simply to apply the terms of the statute to the circumstances in a particular case.'" (quoting *Kenneth Henes Special Projects Procurement v. Cont'l Biomass (In re Certified Question),* 468 Mich. 109, 113, 659 N.W.2d 597 (2003))); *GMAC LLC v. Treasury Dep't,* 286 Mich.App. 365, 372, 781 N.W.2d 310 (2009) (per curiam) ("The rules of statutory construction provide that a clear and unambiguous statute is not subject to judicial construction or interpretation."); *see also Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 438, 119 S.Ct. 755,

142 L.Ed.2d 881 (1999) ("As in any case of statutory construction, our analysis begins with the language of the statute. And where the statutory language provides a clear answer, it ends there as well." (internal citation and quotation marks omitted)).

It is only when a statute is ambiguous that interpretative methods may help to discern the legislature's intent. *See GMAC,* 286 Mich.App. 365, 781 N.W.2d 310 ("Once the intention of the Legislature is discovered, this intent prevails regardless of any conflicting rule of statutory construction."). The mandatory provision is plain and unambiguous, and neither side contends otherwise. Just because the parties disagree as to the plain meaning of the statute does not mean it is ambiguous. *Cf. Mayor of Lansing v. Pub. Serv. Comm.,* 470 Mich. 154, 166, 680 N.W.2d 840 (2004) ("Where a majority finds the law to mean one thing and a dissenter finds it to mean another, neither may have concluded that the law is 'ambiguous,' and their disagreement by itself does not transform that which is unambiguous into that which is ambiguous."). The plain and unambiguous language of the statutory provision controls here.

Moreover, the Court's reading of the statute does not lead to absurd results. It is entirely reasonable to require a formal denial in order to re-trigger the running of the one-year period. If Allstate wants the limitation period to continue running after it pays its estimate of the loss, it can simply notify the insured in no uncertain terms that it is denying all liability in excess of what has paid, thereby placing the insured on clear notice that the limitation period has resumed running. The

Court finds misplaced Allstate's fear that the court's reading will allow an insured to submit a claim, accept payment, ignore the appraisal provision, and then file suit years later alleging underpayment. If Allstate wants to avoid this possibility, it need only explicitly tell the insured that it is formally denying all further liability or otherwise expressly indicate that no future payments will be made. Travelers did this in *Bourke,* and thereby avoided indefinite liability. Others insurance companies have done so as well, thereby avoiding indefinite tolling of the limitations period. *See, e.g., Johnson v. Parker & Sons Roofing & Chimney, Inc.,* No. 271779, 2007 WL 549232, at *2 (Mich.App. Feb. 22, 2007) (per curiam) (holding that letter stating "[w]e regret to inform you that State Farm Fire and Casualty Company formally denies any further liability under the above-captioned policy" was a formal denial of liability); *Barbarich v. Civic Property & Cas. Co.,* No. 264986, 2006 WL 2135541, at *3 (Mich.App. Aug. 1, 2006) (per curiam) (holding that letter stating that earlier payment for loss was a "final settlement," asserting that the one-year statute of limitations for bringing an action on the policy had run, and announcing that no appraiser would be named or further payments, was a formal denial of liability triggering the resumption of the limitations period); *see also id.* at *4 (Kelly, J., dissenting) (opining in dissent that letter from insurance carrier recognizing earlier payment, including additional "final payment," thanking counsel for assistance "in concluding this claim[,]" and noting the difference between the claimed losses and the "net payment to conclude claim," constituted formal denial of liability).[4]

---

**4.** The doctrine of laches might also prevent a stale claim from resurrecting in the event the limitation period remains tolled. *See Attorney General v. PowerPick Club,* 287 Mich.App. 13, 51, 783 N.W.2d 515 (2010) ("The doctrine of laches is triggered by the plaintiff's failure to do something that should have been done under the circumstances or failure to claim or enforce a right at the proper time ... accompanied by a finding that the delay caused some prejudice to the party asserting laches

An insurance carrier "may not lull the insured to sleep by ... a failure to deny liability until after the time limitation has expired and then set up as a defense the failure to bring the action within the limitation fixed by the policy." *William H. Sill Mortgages, Inc. v. Ohio Cas. Ins. Co.,* 412 F.2d 341, 346 (6th Cir.1969) (interpreting Michigan law); *see also Komanicky v. Teachers Ins. & Annuity Ass'n,* No. 99–1687, 2000 WL 1290357, at *3 (6th Cir. Sept. 7, 2000). But rather than wait until the limitation period has expired to deny liability, Allstate goes one step further: it refuses to deny liability *at all,* yet continues to maintain that it deserves the benefit of a limitation defense. This, the law does not allow.

## II. *Jimenez's Motion for Reconsideration*

In contrast to the Court's instant decision denying Allstate's motion for judgment on the pleadings, the Court's September 15 decision excluding from any future class Michigan policyholders with losses before October 22, 2006 did not recognize the difference between Allstate's provision and the statutory provision. That difference was a palpable defect that misled the Court, and correcting the defect will result in a different disposition of this case. Accordingly, reconsideration is warranted. *See* E.D. Mich. 7.1(h)(3).

In limiting the scope of any future class, the Court relied entirely on Allstate's contractual provision, which permits tolling only if Allstate formally denies liability. Adopting the parties' agreement that Allstate had not denied liability in this mat-

ter, the Court ruled that only Michigan policyholders with losses within one year before this action was filed could be members of any future class. *See* Order of September 15, 2010, 10–12. Allstate never mentioned the statutory provision in its briefing. Jimenez cited the contractual and mandatory provisions, but agreed that the contractual provision reflects the statutory mandate. Pl.'s Resp. Br. 4, 18–19 (docket no. 59). Though Jimenez indicated that contractual provisions that conflict with mandatory provisions are void, he never argued that the two were in conflict. Not once did he point out the material difference in language between the two provisions, until doing so in his motion for reconsideration, after the Court had already ruled on Allstate's motion.

The Court surmises that Allstate and Jimenez treated the provisions as identical, while Allstate focused on its own provision and Jimenez focused on the statutory provision, neither party realizing the difference between them. This may account for some of the confusion on the issue at the motion hearing. Because Jimenez never disputed the validity of Allstate's provision, the Court had no reason to compare the two and determine whether they were different; the Court simply applied the language in Allstate's provision. Now that Jimenez has squarely presented the difference between the provisions, it is clear that they conflict and Allstate's provision is void. The palpable defect in the Court's order was its reliance on the parties' agreement that the two provisions were materially similar. While Jimenez should have brought the difference to the Court's attention in his response to Allstate's motion, he did not forfeit the argument by failing to do so.[5] In the Court's

---

and that it would be inequitable to ignore the prejudice so created." (internal citations omitted)).

**5.** The Court is sympathetic to Jimenez's failure to raise the issue earlier. The difference between the provisions is easily overlooked at

first blush. Moreover, it does not seem common that an insurance company would include in its policies provisions that are contrary to law. So it likely was not at the front of counsel's mind when composing a respon-

view, such defects are precisely what motions to reconsider are designed to remedy.

 Applying the statutory provision, there is no basis at this time for limiting any future class to exclude Michigan policyholders with losses before October 22, 2006. In the event Allstate never formally denied liability, as Allstate continues to argue, the limitations period for each class member remained tolled as of the date the member provided Allstate with notice of loss, and the period never began to run again (because Allstate never denied liability). Regardless of when the class member's loss occurred, as long as less than one year passed between the loss and notice to Allstate, the member's claim would be timely. Accordingly, correcting the defect in the Court's order will result in a different disposition of the case. The Court will grant Jimenez's motion for reconsideration and reverse its earlier ruling. Allstate's motion to exclude from any future class Michigan policyholders with losses prior to October 22, 2006 is denied.

To serve judicial economy, the Court adjourned the due date for Jimenez's motion for class certification in order to first decide whether Jimenez himself had a valid claim. *See O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."). Now that the Court has concluded that Jimenez's action is timely, presumably the next step is consideration of class certification. The Court will convene a status conference in the near future to discuss a new scheduling order.

sive argument to closely compare the two

## ORDER

**WHEREFORE,** it is hereby **OR-DERED** that Allstate's motion for judgment on the pleadings (docket no. 75) is **DENIED.**

**IT IS FURTHER ORDERED THAT** Jimenez's motion for reconsideration (docket no. 76) is **GRANTED.** The portion of the Court's order of September 15, 2010 limiting the scope of any future class is **REVERSED.**

**SO ORDERED.**