NOT RECOMMENDED FOR PUBLICATION
File Name: 12a1235n.06

No. 11-2254

**FILED**
*Nov 29, 2012*
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JOHN T. SYRON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| RELIASTAR LIFE INSURANCE | ) | STATES DISTRICT COURT FOR THE |
| COMPANY, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | OPINION |
| _____ | ) | |

**Before: MOORE, GILMAN, and KETHLEDGE, Circuit Judges.**

**RONALD LEE GILMAN, Circuit Judge.** John T. Syron purchased a $7.2 million term-life insurance policy from ReliaStar Life Insurance Company on the life of Nicholas Anthony Ianni, Jr. The policy, providing what is known as "key-man coverage," was intended to protect Syron's interest in a nine-million-dollar loan made to one or more companies that Ianni owned. Ianni was found murdered in his Michigan home three months after the policy was issued. Because ReliaStar had not yet paid Syron the policy's death benefit four months after receiving a claim for payment, Syron filed a lawsuit against ReliaStar in state court.

ReliaStar removed the case to federal court and filed a motion to dismiss for lack of subject-matter jurisdiction, arguing that the case was not ripe for adjudication because ReliaStar was still conducting a contestability review and had not yet denied Syron's claim for payment. The district court granted ReliaStar's motion and dismissed the case without prejudice. Syron timely filed this

appeal.  For the reasons set forth below, we **REVERSE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion.  ReliaStar's request for an award of the costs of this appeal is consequently **DENIED**.

## I.  BACKGROUND

Syron owned a company that was owed more than nine million dollars by one or more of Ianni's companies.  To protect Syron's interest in the debt due his company, Syron sought to insure Ianni's life with "key-man" insurance coverage.  Syron first applied for an "ING Guaranteed Death Benefit Universal Life" insurance policy through Security Life of Denver Insurance Company, which, like ReliaStar, is a member of the ING family of financial companies.  The same form could be used to apply for a policy through both ReliaStar and Security Life of Denver.  Syron's application included financial information about both Syron and Ianni.  It was approved, and the whole-life policy issued on June 15, 2010.  The policy provided a 30-day period for Syron to examine and return the policy for a refund of all premiums paid.

Within that examination period, Syron submitted a second ING application (without specifying a preference for ReliaStar or Security Life of Denver) for a ten-year term life insurance policy on Ianni's life, protecting the same interest in the same debt as the whole-life policy.  This application did not contain the extensive underwriting information that Syron and Ianni submitted with the first application.  Instead, ReliaStar used the information submitted with both applications to underwrite the term policy.  Syron then sent a letter instructing the ING Reliastar Processing Department to cancel the whole-life policy, but only on the condition that his application for a term

policy was approved. ReliaStar issued the term policy on July 7, 2010 and processed the whole-life policy as "not taken."

Ianni was found dead from gunshot wounds in his Michigan home in mid-October 2010. Syron submitted a letter making a claim for payment on the term policy on December 7, 2010, providing a "Proof of Death Claimant's Statement" form, a certified death certificate, and copies of authorizations for release of health-related information signed by Ianni before his death. The letter requested payment within seven days of ReliaStar's receipt of the claim, pursuant to the term policy's provision that "[ReliaStar] will pay the Death Proceeds within 7 days of when we receive due proof of the death claim."

ReliaStar responded two days later, informing Syron that the company was "unable to make payment at this time" because Ianni's death occurred within the policy's two-year contestability period. As such, ReliaStar "need[ed] to verify that all of the questions in the application for insurance were answered correctly." The letter asked for medical-release authorizations to be signed by Ianni's next of kin or estate administrator because some healthcare providers would not accept releases signed by persons no longer living. ReliaStar also noted that it had contacted the police department in Novi, Michigan to verify that Syron was not involved in Ianni's death (pursuant to Michigan's "slayer statute," Mich. Comp. Laws § 700.2803), but that the police had not yet ruled out anyone in the murder investigation. The insurer later requested Ianni's tax returns for the previous three years to verify that his income and net worth were correctly represented on the application for insurance.

Syron disputed that ReliaStar had a contractual right to the information it requested as a prerequisite to approving or denying Syron's claim, but he nonetheless provided the medical-release authorization in March 2011. He did not, however, provide ReliaStar with copies of Ianni's tax returns. ReliaStar neither approved nor denied Syron's claim, maintaining its position that Syron had yet to provide "due proof" of the claim and that its contestability review was ongoing.

In April 2011, Syron filed a lawsuit in state court alleging that ReliaStar had breached the insurance policy contract and had violated Mich. Comp. Laws § 500.2006 by failing to timely pay his claim. He also sought a declaratory judgment that he was entitled to the full death benefit under the term policy. ReliaStar removed the case to the United States District Court for the Eastern District of Michigan and later filed a motion to dismiss the complaint for lack of subject-matter jurisdiction. Syron's complaint, ReliaStar argued, was not ripe for judicial review because ReliaStar had not yet denied his claim for payment.

After a September 2011 hearing on the motion, the district court concluded that the term policy allowed for a contestability review under the facts presented and that the "nine to ten months" that ReliaStar had already taken to do that review was not unreasonable. The court found that Syron's claim was premature and thus dismissed the complaint without prejudice. This timely appeal followed.

Two months after the dismissal of Syron's lawsuit, ReliaStar filed a new action in the same federal district court seeking a declaration that the term policy is void because of alleged fraudulent and material misrepresentations made by Syron and Ianni when procuring the policy. ReliaStar maintained in its complaint that it had "not completed its claim review, received due proof that the

claim is payable, or denied the claim," but that it had learned that Syron and Ianni provided "untruthful and misleading information during the application process for the subject insurance coverage." The alleged misrepresentations concerned the profitability of Ianni's medical-malpractice reinsurance business, Ianni's income and net worth, and the assertion that a lawsuit involving Ianni had been resolved. Syron filed a counterclaim seeking declarations that: (1) the term policy is a valid, enforceable insurance contract; (2) ReliaStar's contestability review is limited to the scope of the representations Syron made in the term-policy application, which did not contain financial representations from Ianni; and (3) ReliaStar's action for declaratory relief is in effect a denial of Syron's claim for the death benefit on the term policy. ReliaStar's complaint and Syron's counterclaim are still pending.

## II. ANALYSIS

### A. Standard of review

We review de novo a district court's determination that claims are not ripe for adjudication and must be dismissed for a lack of subject-matter jurisdiction. *Kruse v. Vill. of Chagrin Falls*, 74 F.3d 694, 697 (6th Cir. 1996); *see also Bigelow v. Mich. Dep't of Natural Res.*, 970 F.2d 154, 157 (6th Cir. 1992) ("If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed."). The present case, however, was removed from state court and should have been remanded instead of dismissed when the district court found a lack of subject matter jurisdiction. *See* 28 U.S.C. § 1447(c). But because the court dismissed the case without prejudice instead of remanding it to state court, we have jurisdiction to review the court's decision as a final

order. *See id.* at § 1291; *see also Zayed v. United States*, 368 F.3d 902, 904-05 (6th Cir. 2004) (noting that the dismissal of an action without prejudice is final and appealable).

Our review takes into account the parties' agreement that ReliaStar's motion to dismiss Syron's complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure was a factual, rather than facial, attack on the complaint. Because ReliaStar raised a factual challenge, "no presumptive truthfulness applies to [Syron's] factual allegations," and the district court was "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *See United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A district court's factual findings in this situation are reviewed under the clear-error standard. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1135 (6th Cir. 1996).

"[S]ince ripeness is peculiarly a question of timing, it is the situation now rather than the situation at the time of the District Court's decision that must govern." *Reg'l Rail Reorganization Act Cases*, 419 U.S. 102, 140 (1974); *see also Buckley v. Valeo*, 424 U.S. 1, 114-17 (1976) (considering facts that occurred after the decision of the Court of Appeals in its ripeness analysis and citing *Regional Rail*); *Casden v. Burns*, 306 F. App'x 966, 972-73 (6th Cir. 2009) (applying *Regional Rail* and considering events occurring after the district court's dismissal to find that claims had become ripe). Our inquiry must thus focus on whether Syron's claim is presently ripe, rather than on whether it was ripe when the district court dismissed his complaint. *See Reg'l Rail*, 419 U.S. at 140.

**B. Syron's claim ripened upon ReliaStar's filing its declaratory action**

When assessing ripeness, "we ask two basic questions: (1) is the claim fit for judicial decision in the sense that it arises in a concrete factual context and concerns a dispute that is likely to come to pass? and (2) what is the hardship to the parties of withholding court consideration?" *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (internal quotation marks and alterations omitted); *see also Dealer Computer Servs., Inc. v. Dub Herring Ford*, 547 F.3d 558, 561 (6th Cir. 2008) (breaking the two parts of *Warshak*'s first question into separate factors for consideration, thus recasting the ripeness analysis as a three-factor assessment).

The district court in the present case found that there was little chance that Syron's claim would not be paid unless the contestability review revealed grounds for not paying. It also determined that the factual record was not sufficiently developed because there were still "issues that need[ed] to be resolved." Most notably, ReliaStar had not completed its contestability review and thus had not indicated whether it would approve or deny Syron's claim. The court rejected Syron's argument that ReliaStar's review had gone on so long that it was effectively a denial of his claim, holding that "nine to ten months" of review was not unreasonable.

Although the district court's analysis might have been correct at the time, a key post-dismissal factual development changes our view—the fact that ReliaStar subsequently filed an action to declare the term insurance policy void. Whatever doubt that then existed about whether ReliaStar would pay Syron's claim no longer remains. According to ReliaStar, the term policy is void because of fraudulent misrepresentations made in the application, and therefore it owes no death benefit to Syron.

Michigan law provides that even an underpayment of a claim, as opposed to an outright refusal to pay any amount, constitutes a denial of liability that can give rise to an insured's cause of action. *Jimenez v. Allstate Indem. Co.*, 765 F. Supp. 2d 986, 991 (E.D. Mich. 2011) (deriving this rule from *Bourke v. N. River Ins. Co.*, 324 N.W.2d 52 (Mich. Ct. App. 1982)). If the underpayment of a claim constitutes a denial, then so too must an insurer's action seeking to void a policy and thereby absolve itself of any duty to pay whatsoever.

Moreover, ReliaStar's lawsuit meets Michigan's test for the *formal* denial of liability (relevant in some circumstances to the running of time that an insured has to file a lawsuit) because it "unequivocally impress[ed] upon the insured that the extraordinary step of pursuing relief in court must be taken." *See Jimenez*, 765 F. Supp. 2d at 992 (internal quotation marks omitted). Seeking a judicial declaration to void the policy sufficiently "impressed upon" Syron that ReliaStar did not intend to pay his claim. The dispute that had yet to come to pass at the time of the district court's order has since occurred, providing a definitive factual context for the case. *See Warshak*, 532 F.3d at 525 (noting that ripeness requires a "concrete factual context and . . . a dispute that is likely to come to pass"). To be sure, ReliaStar argues that its contestability review continues, but this ongoing review does not change the fact that the company has denied Syron's claim. The first part of the *Warshak* test is therefore met because the factual predicate for the harm Syron alleges—the denial of his claim for death benefits in breach of the insurance contract—has now happened.

Syron also meets the second part of the *Warshak* test. The typical ripeness challenge involves a harm that has not yet come to pass, thus causing this court to ask whether "the hardship . . . of withholding court consideration outweighs the costs of allowing litigation by hypothetical."

*Connection Distrib. Co. v. Holder*, 557 F.3d 321, 342 (6th Cir. 2009) (internal quotation marks omitted). But in this case the alleged harm has already occurred. There are no costs of "litigation by hypothetical" against which to balance the hardship of further delaying judicial review of Syron's claim because ReliaStar's denial of payment is no longer hypothetical. Any further delay would be an unwarranted hardship.

ReliaStar's position is that the litigation it initiated should continue, but that Syron's claim is still not ripe for adjudication. But we are unaware of any prudential or statutory rule that allows an insurer to deny liability on one ground while precluding an insured's lawsuit from proceeding simply because the insurer can point to another ground upon which it might decide to deny liability in the future. Nor are we inclined to adopt such a rule that could lead to claim-by-claim litigation and a waste of judicial resources. Once ReliaStar definitively took the position that the term policy was void and that it owed Syron nothing, Syron's claim that he is rightfully owed payment became ripe for adjudication.

Upon remand, the district court should consider consolidating this action with ReliaStar's subsequent action in Case No. 2:11-cv-15098. ReliaStar's request for an award of costs under Rule 38 of the Federal Rules of Appellate Procedure and 28 U.S.C. §§ 1912 and 1927 is denied in light of our decision to reverse the district court's dismissal of Syron's complaint.

### III. CONCLUSION

For all the reasons set forth above, we **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion. ReliaStar's request for an award of the costs of this appeal is consequently **DENIED**.