*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PONTIAC SCHOOL DISTRICT,

        Plaintiff-Appellant,

v

TRAVELERS INDEMNITY COMPANY and
MIDDLE CITIES RISK MANAGEMENT TRUST,

        Defendants-Appellees.

UNPUBLISHED
September 3, 2020

No. 347614
Oakland Circuit Court
LC No. 2017-160269-CZ

Before: GLEICHER, P.J., and STEPHENS and CAMERON, JJ.

PER CURIAM.

Following a lengthy alternative dispute resolution process over a property insurance claim, the Pontiac School District (the district) filed suit against its self-insurance group, Middle Cities Risk Management Trust (MCRMT), and the insurer's excess insurance provider, Travelers Indemnity Company. The circuit court summarily dismissed the district's claims and denied its motion to amend its complaint. We affirm the circuit court's dismissal of the district's claims against Travelers because the suit was filed beyond the policy's two-year limitation period, and its dismissal of the district's claim against MCRMT based on the deduction of certain costs from benefit payout as that controversy must be submitted to ADR. We also affirm, in part, the circuit court's denial of the district's motion to amend its complaint to add counts against MCRMT arising from an allegedly false representation that the insurer was processing the district's claim for payment. However, we reverse the court's denial of the district's motion to amend in all other respects and therefore remand for further proceedings.

## I. BACKGROUND

The district is a member of a group self-insurance property and casualty pool—MCRMT. The relationship between the district and MCRMT is governed by multiple documents: a coverage memorandum, bylaws, and a declaration of trust. The coverage memorandum provided property and casualty insurance for losses up to $2 million. The declaration of trust requires MCRMT to obtain excess insurance coverage for the pool members' losses above the MCRMT coverage amount. MCRMT secured the excess coverage from Travelers Indemnity Company.

The damage underlying this coverage dispute occurred at a recently closed high school owned by the district—Central High School. On August 15, 2011, the district discovered a substantial amount of water in the building. The sublevels were completely filled, and the first floor had approximately four feet of water. The electrical supply to the building's sump pumps had been disrupted by theft or vandalism, leading to the flooding. The district reported the flood damage to MCRMT four days later, and submitted a separate property loss report arising from the theft and vandalism on October 3, 2011. On November 1, 2011, the district submitted a single, unified proof of loss to MCRMT.[1]

MCRMT spent several months investigating the claim. On August 14, 2012, MCRMT notified the district, "We are denying coverage for this claim." The coverage memorandum requires the parties to "submit any controversy arising out of this Coverage Memorandum to the dispute resolution process set forth in the Trust Bylaws." (Bold-face removed.) Consistent with this provision, the district filed an internal appeal and initiated the ADR procedure. Eventually, MCRMT agreed to cover the "flood related loss only." The parties could not agree on the amount of the loss and that issue was submitted to binding appraisal. The replacement cost of the loss was appraised at $12,177,764.07, and MCRMT assessed the actual cash value of the loss as $6,189,738.87. MCRMT paid the district the policy limit of $2,000,000 less $44,933.33 for "ALAE Payments to Date."[2] On August 3, 2016, MCRMT indicated that it would submit the excess loss damages to Traveler's "for their consideration."

It should be noted that MCRMT did not immediately notify Travelers of the district's claims following the loss event. When it did so in July 2012, MCRMT indicated, "We believe the losses would not be covered due to your vacancy exclusion, and [we have] issued letters of declination on several of these losses[.]" Travelers responded to MCRMT alone on August 13, 2012, stating that it had "determined that your policy does not cover this loss," and that "the policy doesn't cover theft or vandalism to a vacant building over 60 days." Despite that the district specifically requested information regarding Travelers' position, MCRMT did not share this

---

[1] The sump pumps again failed in August 2012, when the fire department interrupted the power supply. The district filed a claim for that loss, too, and it was also a subject of the parties' disagreements. However, the losses connected to that event are not at issue on appeal.

[2] "ALAE" stands for "Allocated Loss Adjustment Expenses." As described by Investopedia, available at <https://www.investopedia.com/terms/a/allocated-loss-adjustment-expenses-alae.asp#:~:text=Allocated%20loss%20adjustment%20expenses%20(ALAE)%20are%20attribut ed%20to%20the%20processing,funds%E2%80%94along%20with%20contingent%20commissio ns.> (accessed August 13, 2020), allocated loss adjustment expenses "are attributed to the processing of a specific insurance claim. ALAE is part of an insurer's expense reserves. It is one of the largest expenses for which an insurer has to set aside funds—along with contingent commissions." Further, "[s]ome commercial liability policies contain endorsements, which require the policyholder to reimburse its insurance company for loss adjustment expenses . . . . The term 'adjusting a loss' typically means, 'the process of determining the value of a loss or negotiating a settlement.' " *Id*.

notification with the district. In fact, MCRMT did not notify the district of Travelers' denial of its claim until December 19, 2014, more than two years later.

Travelers was not involved again until after the close of the ADR procedure. Despite its earlier assessment that the policy did not cover the loss, Travelers did not directly deny the claim for excess insurance. Instead, Travelers indicated that it had "been unable to determine whether your claim is covered under the policy based on the information available to us at this time" and that its "research [was] ongoing to determine whether coverage is provided by your policy. Travelers required MCRMT to "provide a written statement detailing the facts and damages associated with this loss" by completing a sworn statement of loss. Travelers ultimately denied coverage.

## II. LEGAL PROCEEDINGS

The district filed a breach of contract action against MCRMT for withholding sums from its loss payout and against Travelers for failing to pay for the excess losses related to the sump pump failure.

In its first responsive pleading, MCRMT moved for summary disposition under MCR 2.116(C)(7) and (C)(10), arguing that the parties had agreed to resolve any disputes through ADR. The circuit court agreed that the dispute related to the deducted ALAE "must be addressed in the alternative dispute process" pursuant to the coverage memorandum.[3]

While MCRMT's summary disposition motion was pending, the district moved for leave to amend its complaint to add counts of (1) fraudulent misrepresentation and innocent misrepresentation based on MCRMT's June 15, 2012 representation that it had already notified Travelers of the district's claim and February 14, 2014 representation following ADR that the water-overflow "claims will be processed for payment"; (2) silent fraud based on MCRMT's failure to notify the district in 2012 that Travelers had denied its claim; and (3) breach of contract against MCRMT for suggesting to Travelers that it deny coverage and failing to timely notify the district of Travelers' 2012 denial of coverage. MCRMT did not respond to this motion or appear at the motion hearing. The circuit court denied the motion in any event. The court had determined in the meantime that the district's complaints must be submitted to ADR and therefore any amendment would be futile.

Travelers later moved for summary disposition under MCR 2.116(C)(10), arguing that the district lacked standing to file suit as it was a not a named insured in MCRMT's excess insurance policy and that the suit was barred by a two-year limitation provision in the Travelers' policy. The circuit court agreed that the district lacked standing as either a named insured or third-party

---

[3] The circuit court also noted that the dispute was to be resolved in accordance with the American Arbitration Association rules, but this Court vacated that portion of the trial court's order when it denied the district's earlier interlocutory application for leave to appeal. *Pontiac Sch Dist v Travelers Indemnity Co*, unpublished order of the Court of Appeals, entered October 10, 2018 (Docket No. 343525).

beneficiary under the policy. Even if the district had standing, the court determined that the suit was barred as it was filed more than two years after the loss occurred.

## III. STANDARDS OF REVIEW

We review de novo a circuit court's summary dismissal of a plaintiff's suit. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). We also review de novo a lower court's determination that a party lacks standing. *Barclae v Zarb*, 300 Mich App 455, 467; 834 NW2d 100 (2013). Summary disposition is warranted under MCR 2.116(C)(7) when a claim is barred by a limitations period or by an agreement to arbitrate. And summary disposition is granted under MCR 2.116(C)(10) when the plaintiff fails to create a genuine issue of material fact for trial. Under either ground, we must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted by the parties in the light most favorable to the opposing party. *Greene v A P Prod, Ltd*, 475 Mich 502, 507; 717 NW2d 855 (2006); *Clay v Doe*, 311 Mich App 359, 362; 876 NW2d 248 (2015).

The interpretation of a contract is also a legal issue that we review de novo. *Titan Ins Co v Hyten*, 491 Mich 547, 553; 817 NW2d 562 (2012).

## IV. STANDING

The circuit court erred in determining that the district lacked standing to file a breach of contract action against Travelers. MCRMT is the only named insured in the Travelers' excess insurance policy. Therefore, to have standing to sue under the policy, the district was required to prove it was a third-party beneficiary of the contract. The district met that burden.

"[O]nly intended, not incidental, third-party beneficiaries may sue for a breach of a contractual promise in their favor." *Schmalfeldt v North Pointe Ins Co*, 469 Mich 422, 427; 670 NW2d 651 (2003). "A person is a third-party beneficiary of a contract only when that contract establishes that a promisor has undertaken a promise directly to or for that person." *Id*. at 428, citing MCL 600.1405. "An objective standard is to be used to determine, from the form and meaning of the contract itself, whether the promisor undertook to give or to do or to refrain from doing something directly to or for the person claiming third-party beneficiary status." *Schmalfeldt*, 469 Mich at 428 (citations omitted).

The district, as a member of the MCRMT pool, is a third-party beneficiary of the Travelers excess insurance policy. MCRMT is the only named insured in the excess insurance policy. Yet, MCRMT owns no property. Instead, the policy states, "This insurance is provided subject to the terms and conditions of the Lead Underlying Insurance Policy specified in the Schedule of Underlying Insurance," which, in this case, is the MCRMT policy listing the district as a named insured. The excess insurance policy directly incorporates MCRMT's policy with the district. As the excess insurance policy was clearly purchased for the benefit of the MCRMT pool members, the district is clearly a third-party beneficiary of that policy.

## V. LIMITATIONS PERIOD

However, the circuit court alternatively ruled that the district's claims against Travelers were barred by a two-year limitation period in the excess insurance policy. Summary disposition

-4-

was warranted on this ground as the district filed suit approximately six years after it suffered damages.

The excess property coverage form contained within the Travelers' policy provides, in relevant part:

> No one may bring a legal action against the Company under this policy unless:
>
> **a.** There has been full compliance with all of the terms of this policy; and
>
> **b.** The action is brought in the United States of America, in a court having proper jurisdiction, within the period of time slated in the Lead Underlying Insurance Policy. *But in no event will this period of time exceed 2 years after the date on which the direct physical loss or damage occurred*, unless:
>
> **(1)** The period of time in which an action may be brought under the Lead Underlying Insurance Policy is a greater period of time that is required by state law; and
>
> **(2)** The Company is required by that state law to provide that greater period of time under this policy;
>
> in which case the greater period of time in which to bring notice will apply. [Italics added.]

As a general rule, unambiguous contractual provisions providing for shortened periods of limitations are to be enforced as written unless the provisions would violate law or public policy. *Rory v Continental Ins Co*, 473 Mich 457, 470; 703 NW2d 23 (2005). Here, the district failed to establish that the shortened limitation period violated the law or public policy. Rather, the district essentially argued that application of the shortened limitation period was unfair because MCRMT did not timely notify Travelers of the loss and then waited to notify the district of Travelers' denial until after the close of the limitations period. The district's true dispute is with MCRMT for its acts and omissions, not with Travelers.

The district contends that the Travelers' policy limitation period conflicts with the accrual date of its claim under the MCRMT policy. Specifically, the district contends that its claim did not accrue until January 2017 based on the following MCRMT contractual provision:

> The Company shall not be liable for any portion of the 'ultimate net loss' in any one occurrence under this policy until:
>
> a. The insurers of the 'underlying insurance' have paid, admitted liability for, or have been held legally liable for the full amount of their respective participation in the 'ultimate net loss,' as specified in the Schedule of Underlying Insurance; and

        b.  The 'ultimate net loss' exceeds the Total Underlying Insurance Limit specified in the Schedule of Underlying Insurance . . . .

Under this provision, the district contends that its breach of contract action did not accrue until two events occurred: MCRMT admitted liability in February 2014 for the sump-pump overflow and the claim was appraised at an amount exceeding the $2 million MCRMT policy limit in January 2017.

However, Travelers had denied that its policy covered the losses at issue long before the value of the claim was assessed. Specifically, the Travelers' policy does not cover losses caused by theft or vandalism in buildings that have been vacant for 60 or more days. Had MCRMT notified the district of Travelers' position, the district could have filed a declaratory judgment action to secure coverage within the two-year limitation period. The trouble lies with MCRMT's failure to notify the district, not with the Travelers' policy.

The district also contends that the policy limitation period was tolled when Travelers received notice of the claim because it did not formally deny the claim. To support its argument, the district relies on caselaw interpreting a statute applicable only to fire insurance policies. See *Smitham v State Farm Fire & Cas Ins Co*, 297 Mich App 537; 824 NW2d 601 (2012); *Jimenez v Allstate Indemnity Co*, 765 F Supp 2d 986 (ED Mich, 2011). And, the Supreme Court held in *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 193; 747 NW2d 811 (2008), that "there is no automatic tolling when a claim is filed unless the contract so provides." The district cites no limitation period tolling provision in the Travelers' policy.

Even if the statute of limitations was tolled and restarted upon the issuance of a "formal denial," Travelers' August 2012 letter sufficed in that regard. The letter expressly stated that "[the] policy does not cover this loss" and specifically cited the reasons why. The letter could not be a clearer articulation that coverage would not be provided.

Accordingly, we affirm the circuit court's summary dismissal of the district's claims against Travelers.

## VI. ADR

The circuit court also properly summarily dismissed the district's breach of contract claim against MCRMT. As found by the circuit court, the district was required to submit its breach of contract claim related to MCRMT's withholding of nearly $45,000 in ALAE to ADR rather than litigation.

The dispute resolution provision of the coverage memorandum states, in relevant part:

The Members and MCRMT will submit *any controversy arising out of this Coverage Memorandum* to the dispute resolution process set forth in the Trust Bylaws. [Bold-face omitted; emphasis added.]

The bylaws, in turn, permit MCRMT to settle claims with its pool members.

In the event that a MEMBER should disagree with the amount at which the POOL proposes to settle a claim or case, the representative of the MEMBER on the BOARD OF DIRECTORS of the POOL, the alternate member or the Chief Officer of the MEMBER may notify the DIRECTOR OF RISK MANAGEMENT that the MEMBER wishes to dispute the manner in which the claim is being handled, and in this regard it wishes to have a meeting with the Claims Committee.

"If the MEMBER is not satisfied with the results of the meeting," the dispute must be placed for a hearing before the MCRMT board of directors. "In the absence of fraud or an abuse of discretion," the board's decision "shall be final."

The district asked the circuit court to interpret the coverage memorandum to determine if MCRMT was permitted to withhold the cost of processing its claim from the benefit payout. In this regard, the district notes that the determination of value provision of the coverage memorandum provides that if a claim proceeds to an appraisal, the parties "will each pay our own appraiser and equally share the cost of the umpire." However, it is unclear whether the ALAE withheld from the benefit payout arose solely from the appraisal. It must be resolved whether other contractual provisions permit the allocation of the cost of the hearings and other claim resolution costs. Accordingly, this is a controversy arising directly out of the coverage memorandum and therefore must proceed through the MCRMT alternative dispute resolution process.

The district contends that it should not have to submit this controversy to ADR because it had already exhausted the ADR procedure. However, the district cites no law or contract provision for this assertion. And nothing in the bylaws or the coverage memorandum limits the number of "controversies" that may arise from a single insurance claim.

The district also attempts to characterize the disagreement at issue as something other than a "controversy" as anticipated in the policy. The district is splitting hairs. Whether a party or a court referred to this issue as a "dispute" or a "controversy" is not dispositive. Indeed, the definition of "controversy" in *Black's Law Dictionary* (11th ed), is "[a] disagreement or a *dispute*." (Emphasis added.)

Accordingly, the circuit court properly dismissed the district's claim in this regard.

## VII. MOTION TO AMEND COMPLAINT

Finally, the district challenges the circuit court's denial of its motion to amend its complaint to include additional counts against MCRMT. We review the court's decision for an abuse of discretion. *Sanders v Perfecting Church*, 303 Mich App 1, 9; 840 NW2d 401 (2013). As previously noted, the district moved for leave to amend its complaint to add counts of (1) fraudulent misrepresentation and innocent misrepresentation based on MCRMT's June 15, 2012 representation that it had already notified Travelers of the district's claim and February 14, 2014 representation following ADR that the water-overflow "claims will be processed for payment"; (2) silent fraud based on MCRMT's failure to notify the district in 2012 that Travelers had denied its claim; and (3) breach of contract against MCRMT for suggesting to Travelers that it deny coverage and failing to timely notify the district of Travelers' 2012 denial of coverage.

Leave to amend should be freely granted "when justice so requires." *Id.*, citing MCR 2.118(A)(2). "[A] motion to amend should ordinarily be denied only for particularized reasons, including undue delay, bad faith or a dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or futility." *PT Today, Inc v Comm'r of the Office of Financial & Ins Servs*, 270 Mich App 110, 143; 715 NW2d 398 (2006). "An amendment would be futile if (1) ignoring the substantive merits of the claim, it is legally insufficient on its face; (2) it merely restates allegations already made; or (3) it adds a claim over which the court lacks jurisdiction. *Id.* (citations omitted).

With one exception, the circuit court erroneously ruled that amendment would be futile based on its conclusion that the additional claims had to be submitted to ADR. As previously noted, the dispute resolution provision of the coverage memorandum requires all "controvers[ies] arising out of [the] Coverage Memorandum" to be resolved through the ADR process contained in the bylaws. For the most part, the district's new claims arose from MCRMT's communications or lack thereof with Travelers and failure to share Travelers' communications with the district. The Travelers' excess insurance policy is not part of the coverage memorandum. Rather, it is a separate insurance policy required by the declaration of trust. Accordingly, the majority of the district's new claims were not controversies arising out of the coverage memorandum. We reverse the court's order to that extent.

The circuit court did correctly determine, however, that the district's proposed new fraudulent misrepresentation claim regarding MCRMT's February 14, 2014 statement that it was processing the district's claim for payment arose from the coverage memorandum. We therefore affirm that portion of the circuit court's order.

MCRMT contends that this Court should affirm the circuit court's denial of the district's motion to amend because by the time the court decided this motion, it had already summarily dismissed the district's complaint against the insurer. The law actually preponderates in the opposite direction. When a circuit court summarily dismisses a party's complaint pursuant to MCR 2.116(C)(10), as done here, "the court shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence before the court shows that amendment would not be justified." MCR 2.116(I)(5).

We affirm the summary dismissal of the district's claims against Travelers and MCRMT. We reverse in part and affirm in part the circuit court's denial of the district's motion to amend its complaint to add counts against MCRMT. We remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Cynthia Diane Stephens
/s/ Thomas C. Cameron

-8-